**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HOTEL 71 MEZZ LENDER LLC, a Delaware limited liability company; and OAKTREE CAPITAL MANAGEMENT, L.P., a Delaware limited liability company;<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL RETIREMENT FUND,<br><br>Defendant. | Case No. 13-3306<br><br>Honorable Ruben Castillo<br><br>Magistrate Judge Brown |
| THE NATIONAL RETIREMENT FUND and THE TRUSTEES OF THE NATIONAL RETIREMENT FUND,<br><br>Counter Claimants,<br><br>v.<br><br>HOTEL 71 MEZZ LENDER LLC, a Delaware limited liability company; OAKTREE CAPITAL MANAGEMENT, L.P., a Delaware limited liability company; and JOHN DOES 1-10 (all other trades or businesses under common control with Chicago H&S Hotel Property, L.L.C.),<br><br>Counter Defendants. | |

**<u>DEFENDANT/COUNTER CLAIMANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS</u>**

Pursuant to Local Rule 56.1, Counter Claimants, the National Retirement Fund and its Trustees (the "Trustees," and together, the "Counter Claimants" or the "NRF"), by and through their undersigned counsel, respectfully submit the following statement of material facts as to which there is no dispute and that entitle them to a judgment as a matter of law.

**The Parties**

1. The NRF is a multiemployer pension fund jointly administered by union and employer trustees. (Counterclaims ¶ 5; Answer to Counterclaims ¶ 5.)[1]

2. The NRF is established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 186(c)(5). (Counterclaims ¶ 5; Answer to Counterclaims ¶ 5.)

3. The Board of Trustees of the NRF is the plan sponsor of the NRF, an employee pension benefit plan within the meaning of Sections 3(2) and (3) of ERISA, 29 U.S.C. §§ 1002(2) and (3), and a defined benefit plan within the meaning of Section 3(35) of ERISA, 29 U.S.C. § 1002(35). (Counterclaims ¶ 6.)

4. The NRF is established and maintained for the purpose of providing retirement and related benefits to eligible participants and beneficiaries. (Counterclaims ¶ 6.)

5. The NRF is a multiemployer plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). (Counterclaims ¶ 7.)

---

[1] As used herein: (1) "Answer ¶ __" refers to the referenced paragraph of the Answer portion of the Answer and Counterclaims of Defendant, the National Retirement Fund, to the Complaint for Declaratory Judgment and Related Relief filed on May 28, 2013 (Docket No. 20); (2) "Answer to Counterclaims ¶ __" refers to the referenced paragraph of the Answer and Affirmative Defenses of Plaintiffs/Counter Defendants to the Counterclaims of Defendant/Counter Claimants filed on June 28, 2013 (Docket No. 29); (3) "Complaint ¶ __" refers to the referenced paragraph of the Complaint for Declaratory Judgment and Related Relief filed on May 1, 2013 (Docket No. 1); (4) "Counterclaims ¶ __" refers to the referenced paragraph of the Counterclaims portion of the Answer and Counterclaims of Defendant, the National Retirement Fund, to the Complaint for Declaratory Judgment and Related Relief filed on May 28, 2013 (Docket No. 20); and (5) "Oaktree Material Facts ¶ __" refers to the referenced paragraph of the Plaintiffs/Counter Defendants' Statement of Undisputed Material Facts filed on June 28, 2013.(Docket No. 30)

6. The Trustees of the NRF are fiduciaries of the NRF within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). (Counterclaims ¶ 8.)

7. Mezz Lender is a Delaware limited liability company having its principal place of business in Wilmington, Delaware. (Counterclaims ¶ 10; Answer to Counterclaims ¶ 10.)

8. In early October 2007, Mezz Lender assumed a 100% ownership interest in Chicago H&S Hotel Property, LLC d/b/a Hotel 71 ("H&S"). (Complaint ¶ 12; Answer ¶ 12.)

9. H&S, as owner of a hotel property in Chicago, Illinois, was a contributing employer to the NRF or its predecessor pursuant to a collective bargaining agreement with the Chicago Joint Executive Board of UNITE HERE, Local 1 and Local 450 (the "CBA"). (Counterclaims ¶ 12; Answer to Counterclaims ¶ 12.)

**Jurisdiction and Venue**

10. This Court has jurisdiction over this matter pursuant to Section 502(a)(3), (e)(1) and (f) and 4301(a), (b) and (c) of ERISA, 29 U.S.C. § 1132(a)(3), (e)(1) and (f) and 1451(a), (b) and (c). (Counterclaims ¶ 3.)

11. Venue is properly laid in this Court pursuant to Section 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. § 1132(e)(2) and 1451(d). (Counterclaims ¶ 4.)

**Additional Relevant Facts**

12. On October 29, 2007, H&S filed a Chapter 11 petition in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court"). (Complaint ¶ 13; Answer ¶ 13.)

13. With regard to H&S's Chapter 11 petition, the NRF filed, *inter alia*, a proof of claim on February 15, 2008 for contingent withdrawal liability, in the event H&S

2

withdrew from the NRF post-petition. (Answer ¶ 27; Affidavit of Jaimie C. Davis, Esq., dated July 19, 2013 ("Davis Aff."), annexed hereto as Exhibit 1, ¶ 2.)

14. In March 2008, H&S filed a reorganization plan (the "Bankruptcy Plan") with the Bankruptcy Court. (Complaint ¶ 14; Answer ¶ 14.)

15. On March 21, 2008, the Bankruptcy Court approved the Bankruptcy Plan. (Complaint ¶ 15; Answer ¶ 15.)

16. In July 2008, pursuant to the Bankruptcy Plan, H&S sold substantially all of its assets (the "H&S Sale"). (Complaint ¶¶ 13, 18; Answer ¶ 13.)

17. The purchaser of H&S's assets assumed the CBA and the obligation therein to contribute to the NRF. (Oaktree Material Facts ¶ 17.)

18. The H&S Sale triggered a complete withdrawal because the parties to the sale did not satisfy two requirements of Section 4204(a)(1) of ERISA: (1) the purchaser to the sale did not provide the NRF a bond or an amount held in escrow, as required by Section 4204(a)(1)(B); and (2) upon information and belief, the contract for sale did not contain the language required by Section 4204(a)(1)(C). (Affidavit of Richard N. Rust, dated July 17, 2013 ("Rust Aff."), annexed hereto as Exhibit 2, ¶ 2.)

19. Mezz Lender held a 100% membership interest in H&S as of March 21, 2008, the date the Bankruptcy Court confirmed the Bankruptcy Plan and approved the Disclosure Statement for the Debtor's Liquidating Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code ("Disclosure Statement"), and neither Mezz Lender nor H&S advised the Bankruptcy Court after March 21, 2008 and before the H&S Sale of a change in the ownership of H&S. (Complaint ¶ 24; Answer ¶ 24; Disclosure Statement, annexed as Exhibit 1 to Order (A) Approving the Disclosure Statement for the Debtor's Liquidating Plan of

Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code, and (B) Confirming Debtor's Second Amended Liquidating Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code, annexed to Complaint as Exhibit B, § III.A).)

20. Mezz Lender held a 100% ownership interest in H&S at the time of the H&S Sale. (Counterclaims ¶ 16; *see* Complaint ¶ 24; Answer ¶ 24; Disclosure Statement § III.A.)

21. As of the date of the withdrawal, Mezz Lender was a "trade or business under common control" with H&S pursuant to Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), Section 414(c) of the Code and the regulations promulgated thereunder. (Counterclaims ¶ 17.)

22. Among other claims, the NRF filed a proof of claim in H&S's bankruptcy for withdrawal liability triggered by the sale in the estimated amount of $1,276,271.33. (Rust Aff. ¶ 3.)

23. On June 21, 2011, the NRF received a final distribution from the H&S bankruptcy proceeding in the amount of $44,969.02. (Rust Aff. ¶ 4.)

24. On May 3, 2013, the NRF received an additional distribution from the H&S bankruptcy proceeding in the amount of $23,974.38. (Rust Aff. ¶ 5.)

25. On April 1, 2013, counsel for the NRF sent counsel for Mezz Lender a letter notifying Mezz Lender that it and all other trades or businesses under common control with H&S (collectively, the "Controlled Group") are liable for the unpaid portion of H&S's withdrawal liability (the "Notice and Demand"). (Counterclaims ¶ 20; Answer to Counterclaims ¶ 20; Rust Aff. ¶ 8, Exhibit A.)

4

26. The Notice and Demand notified the Controlled Group that (a) the Trustees had determined that H&S incurred a complete withdrawal from the NRF, (b) the amount of withdrawal liability allocable to H&S and its controlled group members was $2,169,754, (c) the NRF had received only $44,969.02 from H&S to date as payment for H&S's withdrawal liability, and (d) the balance of the liability was due and payable in 43 quarterly installments of $71,258.77 each, with the first such payment due May 1, 2013, plus a final payment of $11,046.65. (Counterclaims ¶ 22; Rust Aff. ¶ 8, Exhibit A.)

27. On May 1, 2013, instead of paying the withdrawal liability installment due on that date (the "First Installment"), Mezz Lender and Oaktree Capital Management, L.P. (together, the "Oaktree Parties") filed their Complaint for Declaratory Relief against the NRF seeking, *inter alia*, a declaratory judgment that the Oaktree Parties owe no withdrawal liability to the NRF. (Counterclaims ¶ 24; Answer to Counterclaims ¶ 24; Rust Aff. ¶ 6; Docket No. 1.)

28. On May 9, 2013 the NRF sent Mezz Lender counsel a letter, which Mezz Lender's counsel received on May 13, 2013, confirming that the NRF did not receive the First Installment. (Counterclaims ¶ 25; Answer to Counterclaims ¶ 25 Rust Aff. ¶ 9, Exhibit B.)

29. On May 24, 2013, the Oaktree Parties filed a motion for preliminary injunction seeking, *inter alia*, to enjoin the NRF from demanding payment of withdrawal liability pending resolution of any disputes. (Docket No. 16.)

30. As of May 28, 2013, the NRF still had not received the Installment Payment from any member of the Controlled Group. (Rust Aff. ¶ 6.)

31. On May 28, 2013, the NRF filed, with its Answer to the Oaktree Parties' Complaint, Counterclaims seeking a judgment that the Controlled Group be held jointly and

5

severally liable for the unpaid Installment Payment, plus interest, liquidated damages, attorneys' fees and costs. (Docket No. 20.)

32. Under Article IV, Section 7 of the NRF's Agreement and Declaration of Trust, if the NRF commences an action in court to collect delinquent withdrawal liability and prevails, it is entitled to collect from the employer, *inter alia*, liquidated damages in an amount equal to the greater of interest on the delinquent amount or 20% of the delinquent amount. (Davis Aff. ¶ 3, Exhibit A.)

33. At a June 5, 2013 hearing on the Oaktree Parties' motion for preliminary injunction, the Oaktree Parties withdrew their motion after the Court suggested that the Oaktree Parties do so or else the motion would be denied. (Docket No. 26.)

34. On June 28, 2013, the Oaktree Parties filed their Answer and Affirmative Defenses to the Counterclaims. (Docket No. 29.)

35. On July 10, 2013, the NRF received payment from Mezz Lender in the amount of $72,898.69, representing payment of the First Installment, plus interest through July 10, 2013. (Rust Aff. ¶ 6.)

36. To date, the NRF has not received payment of the liquidated damages, attorneys' fees and costs due with respect to the untimely remitted First Installment. (Rust Aff. ¶ 7.)

Dated: July 19, 2013
Chicago, Illinois

By: /s/ Michele Reynolds
Michele Reynolds
DOWD, BLOCH & BENNETT
8 S. Michigan Ave., 19th Floor
Chicago, IL 60603
Telephone: (312) 372-1361
Facsimile: (312) 372-6599

-and-

Ronald E. Richman (*pro hac vice*)
Jaimie C. Davis (*pro hac vice*)
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

*Attorneys for the National Retirement Fund and the Trustees of the National Retirement Fund*