# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| HOTEL 71 MEZZ LENDER LLC, a Delaware limited liability company; and OAKTREE CAPITAL MANAGEMENT, L.P., a Delaware limited liability company;<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL RETIREMENT FUND,<br><br>Defendant. | Case No. 13-3306<br><br><br>Honorable Ruben Castillo<br><br>Magistrate Judge Brown |
| THE NATIONAL RETIREMENT FUND and THE TRUSTEES OF THE NATIONAL RETIREMENT FUND,<br><br>Counter Claimants,<br><br>v.<br><br>HOTEL 71 MEZZ LENDER LLC, a Delaware limited liability company; OAKTREE CAPITAL MANAGEMENT, L.P., a Delaware limited liability company; and JOHN DOES 1-10 (all other trades or businesses under common control with Chicago H&S Hotel Property, L.L.C.),<br><br>Counter Defendants. | |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT/COUNTER CLAIMANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 of the United States District Court for the Northern District of Illinois, Defendant/Counter Claimants, the National Retirement Fund and its Trustees (the "Trustees," and together, the "NRF"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their cross-motion for summary judgment with respect to their Counterclaims against Plaintiffs/Counter Defendants, Hotel 71 Mezz Lender LLC ("Mezz Lender") and all other trades or businesses under common control with Chicago H&S Hotel Property, L.L.C. ("H&S").[1]

## PRELIMINARY STATEMENT

Mezz Lender admits or does not dispute all the facts necessary for a determination that it is liable for the penalties associated with its untimely withdrawal liability installment payment to the NRF. After H&S withdrew from the NRF in July 2008 and paid only a small fraction of its withdrawal liability, the NRF assessed Mezz Lender—a member of H&S's controlled group—for the balance of the liability due. Despite being required under the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), to pay the withdrawal liability according to the schedule set by the NRF, neither Mezz Lender nor any other member of H&S's controlled group timely remitted the first installment payment due on May 1, 2013. Instead, Mezz Lender remitted the installment, with interest, two months late on July 10, 2013—and only after the NRF filed the Counterclaims seeking payment of the installment.

Notwithstanding Mezz Lender's payment of the withdrawal liability installment and interest, the NRF remains entitled to all the remaining mandatory remedies under ERISA. In addition to the principal withdrawal liability amount and interest, ERISA requires a court to

---

[1] The NRF does not waive, and expressly reserves, all of its rights to assert that Plaintiff/Counter Defendant, Oaktree Capital Management, L.P., is a trade or business under common control with H&S and, as such, is jointly and severally responsible for payment of withdrawal liability triggered by H&S's withdrawal from the NRF.

award liquidated damages, attorneys' fees and costs to a plan that brings a successful withdrawal

liability collection claim.  Based entirely on undisputed and admitted facts, the NRF is entitled as

a matter of law to judgment against Mezz Lender and the rest of H&S's controlled group for

these additional amounts.

In addition, for the reasons set forth in Defendant/Counter Claimant's

Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment—filed

simultaneously with this cross-motion—the NRF requests an order denying all the claims set

forth in Plaintiffs/Counter Defendants' Complaint and granting the NRF summary judgment with

respect to such claims.

## FACTUAL BACKGROUND

### A.    The Parties

The NRF is a multiemployer pension fund jointly administered by union and

employer trustees.  (NRF Material Facts ¶ 1.)[2]  The NRF is established and maintained pursuant

to Section 302(c)(5) of the Labor Management Relations Act (the "LMRA"), 29 U.S.C.

§ 186(c)(5).  (*Id.* ¶ 2.)  The Board of Trustees of the NRF is the plan sponsor of the NRF, an

employee pension benefit plan within the meaning of Sections 3(2) and (3) of ERISA, 29 U.S.C.

§§ 1002(2) and (3), and a defined benefit plan within the meaning of Section 3(35) of ERISA, 29

U.S.C. § 1002(35).  (*Id.* ¶ 3.)  The NRF is established and maintained for the purpose of

providing retirement and related benefits to eligible participants and beneficiaries.  (*Id.* ¶ 4.)  The

NRF is a multiemployer plan within the meaning of Section 3(37) of ERISA, 29 U.S.C.

§ 1002(37).  (*Id.* ¶ 5.)  The Trustees of the NRF are fiduciaries of the NRF within the meaning of

Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).  (*Id.* ¶ 6.)

---

[2]    As used herein, "NRF Material Facts ¶ __" refers to the referenced paragraph of Defendant/Counter Claimants'
Statement of Material Facts filed on July 19, 2013.

Mezz Lender is a Delaware limited liability company having its principal place of business in Wilmington, Delaware. (NRF Material Facts ¶ 7.) In early October 2007, Mezz Lender assumed a 100% ownership interest in Chicago H&S Hotel Property, LLC d/b/a Hotel 71 ("H&S"). (*Id.* ¶ 8.) H&S, as owner of a hotel property in Chicago, Illinois, was a contributing employer to the NRF or its predecessor pursuant to a collective bargaining agreement with the Chicago Joint Executive Board of UNITE HERE, Local 1 and Local 450 (the "CBA"). (*Id.* ¶ 9.)

## B. H&S's Bankruptcy and Withdrawal from the NRF

On October 29, 2007, H&S filed a Chapter 11 petition in the United States Bankruptcy Court for the Northern District of Illinois. (NRF Material Facts ¶ 12.) The NRF filed, *inter alia*, a proof of claim on February 15, 2008 for contingent withdrawal liability, in the event H&S withdrew from the NRF post-petition. (*Id.* ¶ 13.) In March 2008, H&S filed a reorganization plan (the "Bankruptcy Plan"). (*Id.* ¶ 14.) On March 21, 2008, the Bankruptcy Court approved the Bankruptcy Plan. (*Id.* ¶ 15.)

In July 2008, pursuant to the Bankruptcy Plan, H&S sold substantially all of its assets. (NRF Material Facts ¶ 16.) The purchaser assumed the CBA and the obligation therein to contribute to the NRF. (*Id.* ¶ 17.) The parties to the sale, however, did not satisfy the other requirements of Section 4204(a)(1) of ERISA which, if met, would have prevented the sale from triggering the Debtor's withdrawal from the NRF. Specifically: (1) the purchaser to the sale did not provide the NRF a bond or an amount held in escrow, as required by Section 4204(a)(1)(B); and (2) upon information and belief, the contract for sale did not contain the language required by Section 4204(a)(1)(C). (*Id.* ¶ 18.) The sale, therefore, triggered a complete withdrawal.

Mezz Lender held a 100% ownership interest in H&S on the date of H&S's withdrawal from the NRF.  (NRF Material Facts ¶¶ 19-20.)[3]  Consequently, Mezz Lender was a "trade or business under common control" with H&S pursuant to Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), Section 414(c) of the Code and the regulations promulgated thereunder. (*Id.* ¶ 21.)

Among other claims, the NRF filed a proof of claim in H&S's bankruptcy for withdrawal liability in the estimated amount of $1,276,271.33, triggered by the sale.  (NRF Material Facts ¶ 22.)  On June 21, 2011, the NRF received a final distribution in the amount of $44,969.02.  (*Id.* ¶ 23.)  On May 3, 2013, the NRF received an additional distribution in the amount of $23,974.38.  (*Id.* ¶ 24.)

## C.    The NRF's Attempt to Collect the Balance of the Withdrawal Liability from Mezz Lender and All Other Trades or Businesses Under Common Control with H&S

On April 1, 2013, counsel for the NRF sent counsel for Mezz Lender a letter notifying Mezz Lender that it and all other trades or businesses under common control with H&S (collectively, the "Controlled Group") are liable for the unpaid portion of H&S's withdrawal liability (the "Notice and Demand").  (NRF Material Facts ¶ 25.)  The Notice and Demand notified the Controlled Group that (a) the Trustees had determined that H&S incurred a complete withdrawal from the NRF, (b) the amount of withdrawal liability allocable to H&S and its controlled group members was $2,169,754, (c) the NRF had received only $44,969.02 from H&S to date as payment for H&S's withdrawal liability, and (d) the balance of the liability was due

---

[3] Mezz Lender admits that it was the 100% owner of H&S through March 21, 2008, the date the Bankruptcy Court confirmed the Bankruptcy Plan and approved the Disclosure Statement for the Debtor's Liquidating Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code.  (NRF Statement of Facts ¶ 19.) Neither Mezz Lender nor H&S advised the Bankruptcy Court after March 21, 2008 and before the July 2008 sale of H&S's assets of a change in the ownership of H&S.  (*Id.*)

and payable in 43 quarterly installments of $71,258.77 each, with the first such payment due May 1, 2013, plus a final payment of $11,046.65. (*Id.* ¶ 26.)

On May 1, 2013, instead of paying the withdrawal liability installment due on that date (the "First Installment"), Mezz Lender and Oaktree Capital Management, L.P. (together, the "Oaktree Parties") filed their Complaint for Declaratory Relief against the NRF seeking, *inter alia*, a declaratory judgment that the Oaktree Parties owe no withdrawal liability to the NRF. (NRF Material Facts ¶ 27.) On May 9, 2013 the NRF sent Mezz Lender counsel a letter, which Mezz Lender's counsel received on May 13, 2013, confirming that the NRF did not receive the First Installment. (*Id.* ¶ 28.) On May 24, 2013, the Oaktree Parties filed a motion for preliminary injunction seeking, *inter alia*, to enjoin the NRF from demanding payment of withdrawal liability pending resolution of any disputes. (*Id.* ¶ 29.)

As of May 28, 2013, the NRF still had not received the First Installment from any member of the Controlled Group. (NRF Material Facts ¶ 30.) Accordingly, on that date, the NRF filed, with its Answer to the Oaktree Parties' Complaint, Counterclaims seeking a judgment that the Controlled Group be held jointly and severally liable for the unpaid Installment Payment, plus interest, liquidated damages, attorneys' fees and costs. (*Id.* ¶ 31.) Under Article IV, Section 7 of the NRF's Agreement and Declaration of Trust, if the NRF commences an action in court to collect delinquent withdrawal liability and prevails, it is entitled to collect from the employer, *inter alia*, liquidated damages in an amount equal to the greater of interest on the delinquent amount or 20% of the delinquent amount. (*Id.* ¶ 32.)

As the Court is aware, at a June 5, 2013 hearing on the Oaktree Parties' motion for preliminary injunction, the Court suggested that the Oaktree Parties withdraw their motion, or else it would be denied. At the hearing, the Oaktree Parties withdrew their motion. (NRF

Material Facts ¶ 33.)  On June 28, 2013, the Oaktree Parties filed their Answer and Affirmative

Defenses to the Counterclaims.  (*Id.* ¶ 34.)

On July 10, 2013, the NRF received payment from Mezz Lender in the amount of

$72,898.69, representing payment of the First Installment, plus interest through July 10, 2013.

(NRF Material Facts ¶ 35.)  To date, the NF has not received payment of the liquidated damages,

attorneys' fees and costs due with respect to the untimely remitted First Installment.  (*Id.* ¶ 36.)

## ARGUMENT

## I.

## SUMMARY JUDGMENT STANDARD

Summary judgment "is properly regarded not as a disfavored procedural shortcut,

but rather as an integral part of the Federal Rules as a whole."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 327 (1986).  Summary judgment should be granted "if the movant shows  that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a); *see Knight v. Wiseman*, 590 F.3d 458, 462 (7th Cir. 2009) (same);

*Hancock v. Cook County Waste & Recycling, Inc.*, No. 09-cv-212, 2010 WL 1416978, at *5

(N.D. Ill. Apr. 5, 2010) (granting summary judgment on behalf of plaintiff pension fund seeking

withdrawal liability); *Cent. States, Se. & Sw. Areas Pension Fund v. Waterland Trucking Serv.,

Inc.*, 375 F. Supp. 2d 684, 686 (N.D. Ill. 2005) (reciting same standard and also granting

summary judgment to plaintiff pension fund on claim for withdrawal liability).

The mere existence of some alleged factual dispute will not defeat a motion for

summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "[T]o

survive summary judgment, the nonmoving party must present evidence sufficient to establish a

triable issue of fact on all essential elements of its case."  *Lewis v. CITGO Petroleum Corp.*, 561

F.3d 698, 702 (7th Cir. 2009), *aff'g Lewis v. PDV America, Inc, et al.*, 532 F. Supp. 2d 1006

(N.D. Ill. 2008) (granting summary judgment).  Here, there are no factual allegations against

Mezz Lender (or the other members of the Controlled Group) in dispute, and Mezz Lender

cannot demonstrate that the NRF is not entitled to judgment as a matter of law.

## II.

### THE CONTROLLED GROUP MUST PAY THE NRF LIQUIDATED DAMAGES, ATTORNEYS' FEES AND COSTS WITH RESPECT TO THE UNTIMELY REMITTED FIRST INSTALLMENT.

**A.**   **Mezz Lender and the Other Members of the Controlled Group Are Jointly and Severally Liable for H&S's Withdrawal Liability.**

The members of the Controlled Group—including, without limitation, Mezz

Lender—are jointly and severally liable for the withdrawal liability triggered by H&S upon its

July 2008 withdrawal from the NRF.

In 1980, Congress amended ERISA by enacting the Multiemployer Pension Plan

Amendments Act ("MPPAA") to address concerns "'that a significant number of

[multiemployer] plans were experiencing extreme financial hardship' . . . and that the imminent

application of ERISA to multiemployer plans 'might induce several large plans to terminate, thus

subjecting [ERISA's pension] insurance system to liability beyond its means.'"  *Cent. States Se.*

*& Sw. Areas Pension Fund v. T.I.M.E.-DC, Inc.*, 826 F.2d 320, 321 (5th Cir. 1987) (quoting

*PBGC v. R.A. Gray & Co.*, 467 U.S. 717, 721 (1984), and *Connolly v. PBGC*, 475 U.S. 211, 215

(1986)); *see* Sections 4201-4225 of ERISA, 29 U.S.C. §§ 1381-1405.  With the MPPAA,

Congress created a carefully integrated system for the assessment and collection of withdrawal

liability under which, *inter alia*, a plan can collect withdrawal liability from a withdrawn

employer, as well as any member of its jointly and severally liable controlled group.  Section

4001(b) of ERISA, 29 U.S.C. § 1301(b); 29 C.F.R. §§ 4001.2-.3; *Cent. States, Se. & Sw. Areas*

*Pension Fund v. Koder*, 969 F.2d 451, 452 (7th Cir. 1992); *Hancock* 2010 WL 1416978 at *6

(same).  Congress enacted the controlled group provision "to prevent businesses from shirking their ERISA obligations by fractionalizing operations into many separate entities." *Teamsters Pension Fund-Bd. of Trs. of the W. Confer. v. Allyn Transp. Co.*, 832 F.2d 502, 507 (9th Cir. 1987) (internal citations and quotations omitted).

As the 100% owner of H&S as of the July 2008 withdrawal date, Mezz Lender was at that time a "trade or business under common control" with H&S.  (*See* NRF Material Facts ¶¶ 20-21.)   Under Treasury Regulation § 1.414(c)-2, "two or more trades or businesses under common control" include a "parent-subsidiary group of trades or businesses under common control," defined as:

> (1) . . . one or more chains of organizations conducting trades or businesses connected through ownership of a controlling interest with a common parent organization if—
>
> > (i) A controlling interest in each of the organizations, except the common parent organization, is owned . . . by one or more of the other organizations; and
> >
> > (ii) The common parent organization owns . . . a controlling interest in at least one of the other organizations, excluding, in computing such controlling interest, any direct ownership interest by such other organizations.

Treas. Reg. § 1.414(c)-2(b).  In the case of a partnership, a "controlling interest" means "ownership of at least 80 percent of the profits interest or capital interest of such partnership." *Id.* § 1.414(c)-2(b)(2)(i)(C).

Pursuant to the foregoing authority and undisputed facts, Mezz Lender held a controlling interest in H&S and thus was in a controlled group with H&S as of the date of H&S's withdrawal.[4]  Mezz Lender thus is jointly and severally liable—together with any other members

---

[4] For purposes of the "controlling interest" analysis, H&S (as a limited liability company) is treated as a partnership, unless it made an election pursuant to Treasury Regulation § 301.7701-3(a) to be treated as a corporation for federal income tax purposes.  In the case of a corporation, a "controlling interest" means "ownership of stock possessing at least 80 percent of total combined voting power of all classes of stock entitled to vote of such corporation or at least

of H&S's Controlled Group—for H&S's withdrawal liability. The NRF, therefore, permissibly assessed Mezz Lender for the unpaid balance of the withdrawal liability triggered by H&S's July 2008 withdrawal.

> **B. The NRF Satisfied ERISA's Procedural Requirements to Succeed on a Claim for Withdrawal Liability Against Mezz Lender and the Other Controlled Group Members.**

The NRF fulfilled the procedural requirements for a claim to collect withdrawal liability from Mezz Lender and the other members of the Controlled Group. After an employer withdraws from a multiemployer plan, the plan sponsor must (1) determine the amount of withdrawal liability owed, (2) notify the employer of this amount, and (3) demand payment. Sections 4202 and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382, 1399(b)(1); *see Trs. of the Soft Drink Indus.-Local Union No. 744 Pension Fund v. Royal Crown Bottling Co.*, No. 08 C 502, 2009 WL 310896, at *2 (N.D. Ill. Feb. 9, 2009). The NRF followed these requirements, as Mezz Lender concedes. The NRF: (1) determined the Controlled Group's withdrawal liability to be $2,169,754; (2) notified the Controlled Group—through a letter to Mezz Lender—of the amount of withdrawal liability and the payment schedule by letter dated April 1, 2013; and (3) demanded payment in accordance with that schedule. (NRF Material Facts ¶ 26.) The NRF's notice to Mezz Lender of the withdrawal liability constitutes notice to all the other members of the Controlled Group. *See Trs. of the Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Centr. Transp., Inc.*, 888 F.2d 1161, 1163 (7th Cir. 1989) (citing cases).

---

80 percent of the total value of shares of all classes of stock of such corporation . . . ." Treas. Reg. § 1.414(c)-2(b)(2)(A). Because Mezz Lender held a 100% ownership interest, it held a "controlling interest" regardless of whether H&S elected to be treated as a corporation.

### C. In Violation of ERISA, Mezz Lender and the Other Members of the Controlled Group Failed to Timely Remit the First Installment.

As Mezz Lender is aware, following its receipt of the Notice and Demand, it became required to pay withdrawal liability installments—commencing with the First Installment—regardless of any pending dispute regarding the assessment. (*See* Plaintiffs' Memorandum of Law in Support of Their Motion for Preliminary Injunction at 11 ("Most significantly, ERISA requires that the employer make periodic payments after receiving notice of a claim for 'withdrawal liability' under the MPPAA, along with assessments of penalties, interest and attorneys' fees even while the proceedings are pending.").)

Congress foresaw that the purpose of ERISA would be undermined if employers could postpone paying their debts to pension funds by engaging in protracted litigation over withdrawal liability. Therefore, the statute directs employers to begin payments upon notification of withdrawal liability, whether or not they choose to dispute the determination. Sections 4219(c)(2), 4221(d) of ERISA, 29 U.S.C. §§ 1399(c)(2), 1401(d); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Lady Baltimore Foods, Inc.*, 960 F.2d 1339, 1341 (7th Cir. 1992) ("[T]he employer may not defer [withdrawal liability] payment[s] pending arbitration. If he wins the arbitration he will get back whatever he has paid but the rule is pay first, arbitrate after.") (internal citations omitted). This has been characterized as the "pay now, dispute later" procedure. *Flying Tiger Line v. Teamsters Pension Trust Fund of Phila.*, 830 F.2d 1241, 1244 (3d Cir. 1987); *see also Cent. States, Se. & Sw. Areas Pension Fund v. A-P-A Transp. Corp.*, No. 02 C 4402, 2004 WL 434215, at *2 (N.D. Ill. Feb. 12, 2004) (holding employer liable for failing to timely remit interim withdrawal liability payments despite ERISA's "clear mandate").

In violation of ERISA, neither Mezz Lender nor any other member of the Controlled Group remitted the First Installment on or before the May 1, 2013 due date. (NRF

Material Facts ¶ 27.)  Mezz Lender did not pay the First Installment to the NRF until July 10, 2013—more than two months late.  (*Id.* ¶ 35.)  Indeed, Mezz Lender remitted the First Installment only after the NRF filed the Counterclaims on May 28, 2013 and after the Oaktree Parties unsuccessfully filed—and at the Court's suggestion on June 5, 2013, withdrew—a preliminary injunction motion seeking, *inter alia*, to stay interim withdrawal liability payments.

### D. The NRF Is Entitled to Full and Immediate Payment of Liquidated Damages, Attorneys' Fees and Costs from Mezz Lender and the Other Members of the Controlled Group.

Notwithstanding Mezz Lender's post-Counterclaims payment of the First Installment and interest, the NRF remains entitled to collect from the Controlled Group the remaining remedies under Section 502(g)(2) of ERISA: liquidated damages, attorneys' fees and costs.  An action under Section 4301(b) of ERISA to collect withdrawal liability—such as the NRF's Counterclaims—is treated as an action under Section 515.  29 U.S.C. § 1451(b).  Section 502(g)(2) of ERISA—which enumerates the mandatory remedies for a successfully action under Section 515—provides that:

> In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan—(A) the unpaid contributions; (B) interest on the unpaid contributions; (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph A, (D) reasonable attorney's fees and costs of the action, to be paid by defendant, and (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan . . . .

29 U.S.C. § 1132(g)(2).  For purposes of Section 502(g)(2), an "action" includes a counterclaim.

*See Penn Elastic Co. v. United Retail & Wholesale Employees Union, Local 115 Joint Pension*

11

*Fund*, 792 F.2d 45, 47 (3rd Cir. 1986) (citing *United Retail & Wholesale Employees Union, Local 115 Joint Pension Plan v. Yahn & McDonnell, Inc.*, 787 F.2d 128 (3d Cir. 1986)).

A multiemployer pension fund that successfully brings an action under Section 515 of ERISA is entitled to not some, but *all* "mandatory add-ons in (successful) suits." *Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1377 (7th Cir. 1992) (affirming summary judgment and award of interest, liquidated damages, and attorneys' fees to pension fund); *see, e.g., Hancock*, 2010 WL 1416978, at *12 (granting summary judgment and awarding interest, liquidated damages, and attorneys' fees and costs); *Chicago Truck Drivers Union Pension Fund v. El Paso CGP Co.*, No. 04 C 7872, 2010 WL 310044, at *3 (N.D. Ill. Jan. 20, 2010) (granting pension fund's summary judgment motion for an award of interest, liquidated damages, and attorneys' fees and costs).

Because Mezz Lender remitted the First Installment and interest after the NRF filed the Counterclaims, the NRF remains entitled to the remaining remedies under Section 502(g)(2) of ERISA—liquidated damages, attorneys' fees and costs. 29 U.S.C. § 1132(g)(2)(C)-(D). *See Bridge v. Transpersonnel, Inc.*, No. 03 C 2437, 2004 WL 2034075, at *4 (N.D. Ill. Sept. 10, 2004) (plan's "claim for penalties arising from [employer's] delinquent interim withdrawal liability payments is not moot merely because the company has now made the withdrawal payments in response to this lawsuit"). "Controlling case law makes it clear that a pension fund's right to collect penalties for late payment is not extinguished by an employer's payment of those obligations." *Id.* (citing *Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp.*, 258 F.3d 645, 654 (7th Cir. 2001) ("[t]he interest and liquidated-damages provisions of ERISA apply . . . to contributions that are unpaid at the date of suit") and *Iron Works Dist. Council of Western N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel*

*Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995) ("an employer cannot escape its statutory liability for interest, liquidated damages or double interest, attorneys fees, and costs simply by paying the delinquent contributions before entry of a judgment in a [Section 502(g)(2)] action")).

For the foregoing reasons, the NRF is entitled to an award of liquidated damages in the amount of $14,251.75—*i.e.*, 20% of the $71,258.77 First Installment—plus attorneys' fees and costs. Because attorneys' fees and costs continue to accumulate, the NRF respectfully requests 10 days from the date of the Court's summary judgment order to submit a statement of damages establishing the full amount of attorneys' fees and costs for the entry of a final money judgment.

## III.

### THE NRF IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS IN THE OAKTREE PARTIES' COMPLAINT.

For the reasons set forth in Defendant/Counter Claimant's Memorandum of Law in Opposition to Plaintiffs/Counter Defendants' Motion for Summary Judgment, and based on the responses and facts set forth in the Defendant/Counter Claimant's Response to Plaintiffs/Counter Defendants' Statement of Material Facts, all of which are incorporated herein by reference, the NRF is entitled, as a matter of law, to a determination that nothing in the Bankruptcy Plan prohibits the NRF from pursuing withdrawal liability from the members of the Controlled Group—including, without limitation, Mezz Lender. Accordingly, the NRF requests an order denying all the claims set forth in Plaintiffs/Counter Defendants' Complaint and granting the NRF summary judgment with respect to such claims.

13

## <u>CONCLUSION</u>

WHEREFORE, Counter Claimants respectfully request that the Court issue an order: (i) granting Counter Claimants' cross-motion for summary judgment in its entirety; (ii) awarding Counter Claimants the full amount of the Controlled Group's unpaid, outstanding liquidated damages, attorneys' fees and costs of this action; (iii) directing Mezz Lender and the other members of the Controlled Group to timely remit all future interim payments of withdrawal liability in accordance with the Notice and Demand,  NRF's Agreement and Declaration of Trust and ERISA; (iv) declaring that the Bankruptcy Plan does not affect the NRF's ability to collect withdrawal liability and associated amounts from Mezz Lender or any other members of the Controlled Group; and (v) granting Counter Claimants such other and further relief as is just and proper.  Counter Claimants further respectfully request that the Court retain jurisdiction to hear and determine all matters arising from the implementation of the foregoing order.

Dated: July 19, 2013                By:  /s/ Michele Reynolds
Chicago, Illinois                       Michele Reynolds
                                  DOWD, BLOCH & BENNETT
                                  8 S. Michigan Ave., 19th Floor
                                  Chicago, IL 60603
                                  Telephone: (312) 372-1361
                                  Facsimile: (312) 372-6599

                                              -and-

                                  Ronald E. Richman (*pro hac vice*)
                                  Jaimie C. Davis (*pro hac vice*)
                                  SCHULTE ROTH & ZABEL LLP
                                  919 Third Avenue
                                  New York, New York 10022
                                  Telephone: (212) 756-2000
                                  Facsimile: (212) 593-5955

                                  *Attorneys for the National Retirement Fund and the*
                                  *Trustees of the National Retirement Fund*