UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOTEL 71 MEZZ LENDER LLC, a Delaware limited liability company; and OAKTREE CAPITAL MANAGEMENT, L.P., a Delaware limited liability company;<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL RETIREMENT FUND,<br><br>Defendant. | Case No. 13-3306<br><br><br>Honorable Ruben Castillo<br><br>Magistrate Judge Brown |
| THE NATIONAL RETIREMENT FUND and THE TRUSTEES OF THE NATIONAL RETIREMENT FUND,<br><br>Counter Claimants,<br><br>v.<br><br>HOTEL 71 MEZZ LENDER LLC, a Delaware limited liability company; OAKTREE CAPITAL MANAGEMENT, L.P., a Delaware limited liability company; and JOHN DOES 1-10 (all other trades or businesses under common control with Chicago H&S Hotel Property, L.L.C.,<br><br>Counter Defendants. | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION
<u>TO DEFENDANT'S CROSS-MOTION</u>**

The confirmed Chicago H&S Plan of Reorganization states:

> [t]he distributions received by creditors, or contemplated, under this Plan are in full and final satisfaction and settlement of any and ***all Claims arising in connection with [H&S's] Chapter 11 case*** that such creditors may have against the Releasees, the Debtor's

>estate, the estate assets and the assets contemplated under this Plan to satisfy Claims, ***and all such claims are released***.

*See* Rule 56.1 Stmt. at ¶ 20, Exhibit 1-A [Plan] at § 13.1 (emphasis added). NRF admits that its alleged withdrawal liability claim arose solely in connection with and because of H&S's Chapter 11 case. *See* Rule 56.1 Stmt. at ¶ 27. NRF admits that the Plaintiffs are "Releasees" as that term is defined in the Plan. *See* Rule 56.1 Stmt. at ¶ 22. The plain language of the H&S Plan, therefore, releases and enjoins NRF's claim against Plaintiffs.

Nevertheless, NRF would have this Court ignore binding 7th Circuit precedent and the principles of *res judicata*, so that it can improperly mount an untimely collateral attack on the H&S Plan—arguing that the H&S Plan does not mean what it says and cannot be enforced. This straw man of an argument falls when confronted by NRF's participation in the H&S bankruptcy case, its filing of pre-confirmation claims, its receipt and notice of the Plan and its delay of five years before questioning the Plan structure. The Bankruptcy Court made specific findings affirming the releases contained in Section 13.1 of the Plan, NRF was aware of those findings and the affirmation of the release, and yet it did not challenge those findings or the release at Plan confirmation. NRF's argument is five years late and barred—the Plan is enforceable. Plaintiffs are entitled to summary judgment on their Complaint.

Entry of summary judgment in favor of Plaintiffs will, of necessity, mean a denial of NRF's counter-claims. Even if NRF's claims were not fully barred by Section 13.1 of the confirmed H&S Plan, NRF's Motion for Summary Judgment must be denied. NRF seeks judgment on the basis of conclusory allegations that Oaktree is a "trade or business under common control" with the Debtor. Plaintiffs contest this fact-specific allegation and contest that any withdrawal liability was incurred. These are questions of material fact on NRF's claim, and, therefore, summary judgment in favor of the NRF is inappropriate.

Plaintiffs respectfully request that this Court enter an order granting summary judgment on their claim for declaratory judgment and denying NRF's counterclaims. In the alternative, Plaintiffs request NRF's motion for summary judgment be denied.

## ARGUMENT

**I.       The Plain Language of the Plan releases Oaktree and enjoins NRF.**

A plan of reorganization is subject to general rules of contract interpretation. *See In re MPF Holding US LLC*, 701 F.3d 449, 457 (5th Cir. 2012). In interpreting a plan of reorganization, the Court must start first with its plain language. *See Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 456 (7th Cir. 1991). The plain language of the release contained in Section 13.1 releases all claims "arising in connection with the Debtor's Chapter 11 case." NRF admits that any withdrawal claim it may have was triggered by the sale of Hotel 71 subsequent and pursuant to the confirmed H&S Plan of Reorganization. *See* Rule 56.1 Stmt. at ¶ 27. This is unquestionably a claim which "arose in connection" with the Chapter 11 case—if H&S had not filed bankruptcy and sold Hotel 71 pursuant to the Plan, no withdrawal would have occurred and NRF would not be able to assert the withdrawal liability it now claims.[1]

NRF attempts to use (and miscast) parol evidence to argue that the plain language of the Plan should be ignored and Oaktree should be denied the benefit of its bargained-for release. (Resp. p. 8-9.) Parol evidence can only be applied in interpreting a plan of reorganization if the plan is ambiguous. *See In re Commercial Millwright Serv. Corp.,* 245 B.R. 585, 593 (Bankr. N.D. Iowa 1998); *see also Curia v. Nelson*, 587 F.3d 824, 829 (7th Cir. 2009) ("But if the

---

[1] Ironically, if Oaktree had not acted to save Hotel 71 from state court foreclosure, a true withdrawal would have occurred; NRF's constituents would be unemployed and NRF would have received neither its payments under the Plan nor any continuing payments because there would have been no assumed and assigned collective bargaining agreement. Now, the NRF wants to "have its cake and eat it too" by attempting to collect purported withdrawal liability even though it suffered no damages as a result of H&S's purported withdrawal and in fact benefitted from Oaktree's decisions.

contract is ambiguous… parol evidence is admissible to explain and ascertain what the parties intended.") (internal quotations omitted). But NRF does not and cannot argue that Section 13.1 of the Plan is ambiguous. As such, parol evidence, like the Debtor's arguments during plan confirmation, is irrelevant and cannot be considered by this Court. Given the plain language of Section 13.1, NRF's claim is barred.

Regardless, the arguments at the confirmation hearing, including those of Mr. Zazove, clearly support the Plaintiffs' position. The initial Plan of Reorganization did not restrict its release language to claims "arising in connection with the Debtor's Chapter 11 case." *In re Chicago H&S Hotel Properties, LLC*, No. 07-20088, *Docket No.* 97. An amended plan filed on February 7, 2008 narrowed the release to claims arising in connection with the Chapter 11 case. *Id.* at *Docket No.* 312. The final confirmed version of the Plan further includes the following language:

> For the avoidance of doubt, nothing in this section is intended, or shall be construed, to release, modify or otherwise affect any direct claim or direct cause of action that creditors have, or might have, against any third parties ***that arose prior to the Petition Date***.

*See* Rule 56.1 Stmt. at ¶ 20, Exhibit 1-A [Plan] at § 13.1 (emphasis added). These modifications demonstrate exactly the concern raised and addressed in the Plan confirmation hearings—that the Plan not release pre-petition third party claims. The statements on the record cited by NRF are unrelated to the issues before this Court. Those statements universally relate to the concern that the Debtor's former owners and others who aided and abetted their actions remain liable for their actions post-confirmation. *See* NRF Rule 56.1 Resp. ¶¶ I-R.

While they confirmed on the record that the amended Plan did not release ***pre-petition*** third party claims, Mr. Zazove and the other plan proponents were clear that Section 13.1 releases all ***post-petition*** third party claims. *See* NRF Rule 56.1 Resp. 2nd Hearing Tr. at 18:11-

16 ("Mr. Erens: Section 13.1 of the plan is, in effect, in the nature of what I would call a quasi-exculpation. My understanding is there's no objection to that section."); NRF Rule 56.1 Resp. 2nd Hearing Tr. at 25:22-24 ("Mr. Erens: the language of 13.1 limits the release to matters in connection with this case."); NRF Rule 56.1 Resp. 4th Hearing Tr. at 90:23-91:5 ("The Court: What about the exculpatory claim? Mr. Zazove: No. That's right out of [Airadigm]. We took the language -- the language is almost identical to the exact language that's exactly in that case. I mean it almost reads word for word."). In fact, the Bankruptcy Court *explicitly* approved the exculpation contained in the releases stating: "The debtor has established that the exculpation clause is in conformity with Seventh Circuit precedent." NRF Rule 56.1 Resp. 4th Hearing Tr. at 98:19-21.

As the testimony at the confirmation hearing shows, the purpose and scope of Section 13.1 was to free Plaintiffs and the other Releases from claims (third party or otherwise) that could arise from the administration of the Debtor's Chapter 11 case. *See also* Rule 56.1 Stmt. Exhibit A [Plan] at § 13.5 (exculpating certain parties, including Oaktree from liability relating to the chapter 11 case and the structure and administration of the H&S Plan). NRF's assertion of statutory withdrawal liability is based solely on a perceived structural flaw in the Hotel 71 sale. *See* NRF Rule 56.1 Stmt. at ¶ 18. NRF admits that a different type of sale would not have caused any withdrawal liability. *Id.* Alleged structural "errors" of this type are *exactly* the kind of liability Sections 13.1 and 13.5 of the Plan are intended to release. Release of liability arising from such a defect is especially appropriate where Oaktree halted a pending mortgage foreclosure, preserved the going-concern value of the Hotel, sold the Hotel on a going-concern basis to a party that assumed the collective bargaining agreement, thereby preserving the jobs of the hotel employees (including NRF's constituents) and allowing NRF contributions to continue,

subordinated its own claim for the benefit of other creditors, and therefore allowed creditors (including NRF) to collect amounts they otherwise would not have received. To expose Oaktree to some alleged statutory liability simply because the mortgage lender refused to place a bond when credit bidding its mortgage debt at the sale of the hotel would be manifestly unjust. The releases contained in the Plan prevent this injustice.

Considering, then, the parol evidence and the plan confirmation process, the Plan's plain language holds true. The Plan releases Oaktree from NRF's alleged withdrawal liability. Given this release and exculpation, summary judgment in favor of Oaktree is appropriate.

**II.    The H&S Plan is enforceable and attacks upon the Plan are barred by *res judicata*.**

Not content to mischaracterize the confirmation hearing and the ruling of the Bankruptcy Court, NRF would also unwind confirmation and undo its releases. However, "as a general rule, the failure to raise an objection at the confirmation hearing or to appeal from the order of confirmation should preclude attack on the plan or any provision therein as illegal in a subsequent proceeding." *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000) (quoting *In re Chappell*, 984 F.2d 775, 782 (7th Cir.1993). In fact, the confirmation of a plan of reorganization precludes the litigation of any issue that *could have been raised* in the confirmation proceeding. *See In re Rovell*, 95 B 21171, 2000 WL 236368 (Bankr. N.D. Ill. Feb. 17, 2000) (interpreting reach of 11 U.S.C. § 1141(a)). NRF's predecessor was not only aware of the Plan and confirmation hearing, but one of the union's representatives *attended* the confirmation hearing.[2]

---

[2] NRF denies that it received the Cure Notice for Assumed Contracts or of the Hearing to confirm the Plan. *See* NRF Rule 56.1 Resp. ¶ 15. However, certificates of service demonstrating that both of those documents were mailed to its attorney's Chicago address were filed with the Court. *In re Chicago H&S Hotel Properties, LLC*, No. 07-20088, *Docket Nos.* 104 and 117. An affidavit from NRF's New York attorney cannot stand in the face of NRF's presumptive receipt. *See O'Brien v. R.J. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993)("A signed return of service constitutes prima facie evidence of valid service "which can be overcome only by strong and convincing evidence.") (internal quotations omitted). In fact, the Hearing notice was served in the same package as

LEGAL27153259.3

*See* NRF Rule 56.1 Resp. 1st Hearing Tr. at 3:25-4:1 ("Lars Negstad for United Here Local 1"). NRF could have objected to the Plan and raised the scope of the release, but chose not to. The Bankruptcy Court explicitly found that the Plan language was in conformity with *Airadigm*. When NRF's predecessor failed to object or appeal the plan's confirmation, it lost any opportunity to challenge the release and injunction provisions. *See In re UAL Corp.*, 635 F.3d 312, 321 (7th Cir. 2011), as amended on denial of reh'g (Apr. 13, 2010) ("By failing to object to or appeal the plan's confirmation, [creditor] lost any opportunity to seek an exemption from or to challenge [disputed] provision.") As such, NRF's arguments that the release in Section 13.1 does not comply with *In re Airadigm* are barred. (Resp.10-12)

Nor can NRF now argue that the H&S Plan is preempted by ERISA. "Once a plan is confirmed neither a debtor nor a creditor can assert rights that are inconsistent with its provisions." *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1317 (4th Cir. 1996) (citing *Stoll v. Gottlieb*, 305 U.S. 165, 170-71 (1938)); *see also* 11 U.S.C. § 1141(a); 5 L. King, Collier on Bankruptcy ¶ 1141.01, at 1141–5 (15th ed.1983); *In re Chi., Milwaukee, St. Paul & Pac. R.R. Co.*, 891 F.2d 159, 161 (7th Cir.1989) ("When an order of conformation is entered, it binds the debtor and all creditors to the terms of the plan of reorganization."). In *Varat Enterprises*, the Fourth Circuit Court of Appeals held that a secured lender could not later object to the classification of a different creditors claim, when the secured lender was aware of the classification at confirmation and failed to object. Here, NRF attempts to evade the Plan's release and exculpation, when it was fully aware of the Plan terms at confirmation, aware that the terms of the Plan might give rise to withdrawal liability and filed a preemptive claim alleging

---

the Plan and voting requirements which NRF admits receiving. *Id.* at *Docket No.* 117. Regardless, NRF remains bound by the Plan and its terms. 11 U.S.C. § 1141(a).

withdrawal liability, but failed to object to the Plan. This is exactly the situation the Fourth Circuit address in *Varat.* NRF's untimely objections must be barred.

Further, even if NRF's arguments were colorable, it cites no cases to support its allegation that a Plan release of withdrawal liability is unenforceable. Instead, it cites cases in which controlled group members argued that the mere confirmation of a Chapter 11 plan rendered a withdrawal liability claim unenforceable against other members of the controlled group. *See Cent. States, Se. & Sw. Areas Pension Fund v. Landvatter,* 89 C 5228, 1992 WL 93227 (N.D. Ill. Apr. 30, 1992); *NYSA-ILA Pension Trust Fund v. Lykes Bros., Inc.*, 96 CIV. 5616 (DLC), 1997 WL 458777 (S.D.N.Y. Aug. 11, 1997); *McDonald v. Centra, Inc.*, 946 F.2d 1059 (4th Cir. 1991). Those cases are not analogous to the case at hand. Here, pursuant to the H&S Plan the Debtor assumed and assigned its collective bargaining agreement as part of the sale of its assets, the purchaser continued to contribute to the NRF under the same bargaining agreement, and Plaintiffs were explicitly released from any potential claim.[3] While it is true that the discharge or reorganization of a debtor by itself does not impliedly release other members of a controlled group, such liability (statutory or otherwise) may be explicitly released in a Chapter 11 Plan. *Cent. States, Se. & Sw. Areas Pension Fund v. Stroh Brewery Co.*, 220 B.R. 959, 963 (N.D. Ill. 1997) In *Stroh's* this Court explicitly upheld a release of ERISA withdrawal liability pursuant to a Plan of reorganization.[4] *Id.* ("Central States is bound by the release and discharge provisions of the Plan and is enjoined from bringing claims against Stroh based on Heileman's withdrawal liability.") Here, the H&S Plan in no uncertain terms released Oaktree's liability and

---

[3] As noted below, the Plaintiffs do not agree that withdrawal liability was incurred in connection with the sale of Hotel 71.

[4] In *Stroh's*, the Court noted the Plan's release of not only primary withdrawal liability, but third-party controlled group liability. *Stroh's*, 220 B.R. at 963. However, because the alleged controlled group defendant was not a "trade or business" as defined in ERISA the court did not address the release of controlled group liability.

NRF cannot now, five years after confirmation, seek to collaterally attack that Plan. The Plan released NRF's claim against Oaktree and bars NRF's attempts to collect. Summary judgment in favor of the Plaintiffs on their count for summary judgment is appropriate.

**III.     NRF's counterclaims are rife with disputed questions of material fact.**

In addition to its response to Plaintiffs' Motion for Summary Judgment, NRF has filed a cross-motion for summary judgment on its Counterclaims. (*See Docket Nos.* 34-36) However, even if NRF were not barred from pursuing those claims, which it is, NRF's Motion is premature. The record is rife with factual issues which preclude the Court from entering summary judgment in favor of the NRF on its claim. *See* Fed.R.Civ.P. 56(a).

First and foremost, NRF argues that at the time the sale of Hotel 71 closed, Hotel 71 Mezz Lender LLC was a "trade or business under common control" with the Debtor. NRF Rule 56.1 ¶ 21. As the First Circuit recently held, whether an entity is a trade or business for the purpose of ERISA controlled group liability is a question of fact. *See Sun Capital Partners III, LP v. New England Teamsters & Trucking Indus. Pension Fund,* 12-2312, 2013 WL 3814984, at *8 (1st Cir. July 24, 2013) (describing determination as a "fact-specific approach"). NRF cites no facts in support of its self-serving and conclusory in the Counterclaim, which Plaintiffs deny. NRF Rule 56.1 ¶ 21; Plaintiffs Rule 56.1 Resp. ¶ 21. In failing to point to even a single fact, NRF has not met its burden under Fed. R. Civ. P. 56(c)(1)(A). *See, e.g. Prince v. Stewart*, 05 C 5849, 2011 WL 1193205 (N.D. Ill. Mar. 30, 2011) (movant cannot rely on Rule 56.1 statement which cites no evidentiary basis for facts asserted) (citing *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.,* 301 F.3d 610, 613 (7th Cir. 2002). The Court should deny this motion as premature.

Further, NRF fails to address the question of whether the Debtor *actually incurred* withdrawal liability—which neither the Debtor nor the Plaintiffs have admitted. Rule 56.1 Stmt. ¶ 28; Plaintiffs Rule 56.1 Resp. ¶ 18. While Plaintiffs admit the structure of the Hotel 71 sale, Plaintiffs assert that the assumption and assignment of the collective bargaining agreement pursuant to the Plan and 11 U.S.C. § 365(k) barred NRF from assumption of any withdrawal liability. *See* Rule 56.1 Stmt. Ex. B [SALE ORDER] at § 13. The NRF has not demonstrated that 11 U.S.C. § 365(k) does not bar its claim for withdrawal liability against the Debtor.

## CONCLUSION

For the foregoing reasons, Plaintiffs, Hotel 71 Mezz Lender LLC and Oaktree Capital Management, L.P., respectfully request that the Court enter an order (1) granting them summary judgment, declaring that Plaintiffs and other Releasees under the Plan have no obligation to the National Retirement Fund for withdrawal liability, and enjoining NRF from commencing or continuing in any manner, any suit, action or other proceeding against Oaktree Capital, Hotel 71 Mezz Lender or any member of its controlled group, as determined pursuant to section 4001(b) of ERISA, 29 U.S.C. section 1301(b) for any other alleged obligation, right, cause of action, remedy or liability released by the Plan; (2) granting them summary judgment denying NRF's counterclaims; and (3) providing such other and further relief as the Court deems just and necessary. In the alternative, Plaintiffs, Hotel 71 Mezz Lender LLC and Oaktree Capital Management, L.P., respectfully request that the Court enter an order denying NRF's Cross-Motion for Summary Judgment.

- 10 -

DATE:  August 2, 2013

Respectfully submitted,

HOTEL 71 MEZZ LENDER LLC and
OAKTREE CAPITAL MANAGEMENT, L.P.
/s/Daniel A. Zazove____
One of Their Attorneys

Daniel A. Zazove (#3104117)
Christopher B. Wilson (#6202139)
Kathleen Stetsko (#6297704)
Abiman Rajadurai (#6308091)
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone :  (312) 324-8400
Telecopier :  (312) 324-9400
dzazove@perkinscoie.com
cwilson@perkinscoie.com
kstetsko@perkinscoie.com
arajadurai@perkinscoie.com

- 11 -

LEGAL27153259.3

## CERTIFICATE OF SERVICE

I, Daniel A. Zazove, certify that on August 2, 2013, I caused **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO DEFENDANT'S CROSS-MOTION** to be filed pursuant to the Court's CM/ECF system and served via the Court's CM/ECF System on:

>Michele M. Reynolds
>Jeremy M. Barr
>Dowd, Bloch & Bennett
>8 S. Michigan Avenue--19th Floor
>Chicago, IL  60603
>Telephone:  312.372.1361
>
>Jaimie Caren Davis
>Ronald E. Richman
>Schulte Roth & Zabel LLP
>919 Third Avenue
>New York, NY  10022
>Telephone:  212.756.2000

>>/s/Daniel A. Zazove____
>>One of the Attorneys for Plaintiffs/Counter-Defendants

Daniel A. Zazove (#3104117)
Christopher B. Wilson (#6202139)
Kathleen Stetsko (#6297704)
Abiman Rajadurai (#6308091)
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone :  (312) 324-8400
Telecopier :  (312) 324-9400
dzazove@perkinscoie.com
cwilson@perkinscoie.com
kstetsko@perkinscoie.com
arajadurai@perkinscoie.com