**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HOTEL 71 MEZZ LENDER LLC, a Delaware limited liability company; and OAKTREE CAPITAL MANAGEMENT, L.P., a Delaware limited liability company;<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL RETIREMENT FUND,<br><br>Defendant. | Case No. 13-3306<br><br>Honorable Ruben Castillo<br><br>Magistrate Judge Brown |
| THE NATIONAL RETIREMENT FUND and THE TRUSTEES OF THE NATIONAL RETIREMENT FUND,<br><br>Counter Claimants,<br><br>v.<br><br>HOTEL 71 MEZZ LENDER LLC, a Delaware limited liability company; OAKTREE CAPITAL MANAGEMENT, L.P., a Delaware limited liability company; and JOHN DOES 1-10 (all other trades or businesses under common control with Chicago H&S Hotel Property, L.L.C.),<br><br>Counter Defendants. | |

**PLAINTIFFS/COUNTER DEFENDANTS' RESPONSE TO DEFENDANT/COUNTER CLAIMANT'S STATEMENT OF ADDITIONAL MATERIAL FACTS**

Plaintiffs/Counter-Defendants, Hotel 71 Mezz Lender LLC and Oaktree Capital Management, L.P., by and through their undersigned counsel, hereby respond to Defendant/Counter Claimant's Statement of Additional Material Facts:

A. In early October 2007, Hotel 71 Mezz Lender LLC ("Mezz Lender") assumed a 100% ownership interest in Chicago H&S Hotel Property, LLC ("Chicago H&S"); Mezz Lender held that interest as of March 21, 2008, the date the Bankruptcy Court confirmed the Bankruptcy Plan and approved the Disclosure Statement for the Debtor's Liquidating Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code ("Disclosure Statement"); and

neither Mezz Lender nor Chicago H&S advised the Bankruptcy Court after March 21, 2008 and before the date of the sale of Chicago H&S of a change in the ownership of H&S. (Complaint ¶¶ 12, 24; Answer ¶¶ 12, 24; Disclosure Statement, annexed as Exhibit 1 to Order (A) Approving the Disclosure Statement for the Debtor's Liquidating Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code, and (B) Confirming Debtor's Second Amended Liquidating Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code, annexed to Complaint as Exhibit B, § III.A.)

**ANSWER:** Admitted.

B. During the period from early October 2007 through March 21, 2008 Oaktree Capital Management, L.P. ("Oaktree Management") owned or controlled Mezz Lender, and neither Mezz Lender, Chicago H&S, nor Oaktree Management advised the Bankruptcy Court after March 21, 2008 and before the date of the sale of Chicago H&S of a change in the relationship between Oaktree Management and Mezz Lender. (See H&S's Statements of Financial Affairs, annexed hereto as Exhibit I, at Statement of Financial Affairs ¶ 21(b); Disclosure Statement § III.A.)

**ANSWER:** Admit that during the period from early October 2007 through March 21, 2008 Oaktree Capital Management, L.P. ("Oaktree Management") was the manager of Mezz Lender, and neither Mezz Lender, Chicago H&S, nor Oaktree Management advised the Bankruptcy Court after March 21, 2008 and before the date of the sale of Chicago H&S of a change in the relationship between Oaktree Management and Mezz Lender. Denied that Oaktree Management was the owner of Mezz Lender. (*See* Statement Ex. 7 [Gibson Dunn Letter] noting that Mezz Lender "has been owned since its formation approximately 98% by OCM Real Estate Opportunities Fund III, L.P. and 2% by another entity.")

C. In March 2008, the Honorable Eugene R. Wedoff held hearings (the "Hearings") regarding confirmation of Chicago H&S's reorganization plan (the "Plan"). (*See* Transcript of March 11, 2008 Morning Hearing ("1st Hearing Tr."), annexed hereto as Exhibit A; Transcript of March 11, 2008 Afternoon Hearing ("2nd Hearing Tr."), annexed hereto as Exhibit B; Transcript of March 19, 2008 Hearing ("3rd Hearing Tr."), annexed hereto as Exhibit C; and Transcript of March 21, 2008 Hearing ("4th Hearing Tr."), annexed hereto as Exhibit D (collectively, the "Transcripts").)

**ANSWER:** Admitted, but Plaintiffs affirmative state that an additional hearing was held on March 20, 2008. (*See* Transcript of March 20, 2008 Hearing ("March 20 Hearing Tr."), annexed hereto as Exhibit 8.)

      D.     Judge Wedoff presided over two separate Hearings on March 11, 2008 (the "First Hearing" and "Second Hearing," respectively), one hearing on March 19, 2008 (the "Third Hearing") and one hearing on March 21, 2008 (the "Fourth Hearing"). (*See generally* Transcripts.)

**ANSWER:** Admitted, but Plaintiffs affirmative state that an additional hearing was held on March 20, 2008. (*See* Transcript of March 20, 2008 Hearing ("March 20 Hearing Tr."), annexed hereto as Exhibit 8.)

      E.     The Transcripts do not reflect that Section 13.4 of the Plan was discussed at the hearings. (*See generally* Transcripts.)

**ANSWER:** Admitted that no specific reference to Section 13.4 was made at the hearings. Denied that Section 13.4 was not discussed. (*See generally* Transcripts.)

      F.     A central issue raised by objectors during the Hearings was the scope of the release in Section 13.1 of the Plan. (*See generally* Transcripts.)

**ANSWER:** Admitted that the scope of releases in the Plan was an issue raised by objectors. Denied that this issue was limited solely to Section 13.1 of the Plan. (*See generally* Transcripts.).

      G.     Objectors were concerned, *inter alia*, that the Plan could be interpreted as releasing third-party claims. (*See, e.g.,* 1st Hearing Tr. 6:8-11, 8:8-10; 2nd Hearing Tr. at 9:5-10, 28:18-29:1, 32:18-22; 4th Hearing Tr. at 77:24-79:7.)

**ANSWER:** Admitted that objectors were concerned whether the releases in the plan released third-party pre-petition claims. Denied that this was a question of interpretation. (*See generally* Transcripts.).

- 3 -

      H.      Daniel Zazove—current counsel to Plaintiffs/Counter Defendants—represented Chicago H&S Hotel Property, LLC at the Hearings. (*See generally* Transcripts.)

**ANSWER:** Admitted.

      I.      During the Hearings, Mr. Zazove repeatedly represented to the Bankruptcy Court that the Plan does not release third-party claims. (*See* 2nd Hearing Tr. at 10:1; 4th Hearing Tr. at 37:22-38:6, 90:21-22.)

**ANSWER:** Admitted that Mr. Zazove represented that the plan did not release third-party pre-petition claims. Denied that Mr. Zazove represented that the plan did not release third-party post-petition claims. (*See generally* Transcripts; 4th Hearing Tr. at 90:19-91:5 ("The Court: What about the exculpatory claim? Mr. Zazove: No. That's right out of [Airadigm]. We took the language -- the language is almost identical to the exact language that's exactly in that case. I mean it almost reads word for word.").)

      J.      During the Second Hearing, in response to a statement by an objector to the Plan, Mr. Zazove represented that the Plan does not release third-party claims, which the Bankruptcy Court acknowledged:

> "MR. JACOBSEN [counsel to objecting creditor]: At this point we are objecting to the scope of the releases . . . . The language of the plan could be construed as an attempt to release third-party claims . . . .
>
> . . .
>
> THE COURT: Well, if there's anything that could be construed that way in the plan, Mr. Zazove's body language indicates that he will disaffirm any such attempt.
>
> MR. JACOBSON: Okay. Great, Judge.
>
> MR. ZAZOVE: No third-party releases.
>
> . . .
>
> THE COURT: Okay. I thought so, too, when having read it."
>
> (2nd Hearing Tr. at 9:5-10, 9:21-10:5.)

- 4 -

**ANSWER:** Admitted that the statements reflected in the transcript were made. Denied that Mr. Zazove represented that the plan did not release third-party post-petition claims. (*See generally* Transcripts; 4th Hearing Tr. at 90:19-91:5 ("The Court: What about the exculpatory claim? Mr. Zazove: No. That's right out of [Airadigm]. We took the language -- the language is almost identical to the exact language that's exactly in that case. I mean it almost reads word for word.").)

K. During the Second Hearing, Judge Wedoff acknowledged Mr. Zazove's statements that the Plan does not release third-party claims:

- "THE COURT: We have a clarification on the record that the plan contains no third-party releases."

    (2nd Hearing Tr. at 18:8-10.)

- THE COURT: Well, I repeated your statements that there were no third-party releases.

    MR. ZAZOVE: I understand."

    (2nd Hearing Tr. at 21:10-12.)

- "THE COURT: I don't have the language in front of me, so I'm not able to look at that and come to any definitive conclusion. If you're happy to have Mr. Zazove say, as he said earlier today, there's no third-party release of this plan, then we'll let it rest at that."

    (2nd Hearing Tr. at 32:23-33:3.)

**ANSWER:** Admitted that the statements reflected in the transcript were made. Denied that Mr. Zazove represented that the plan did not release third-party post-petition claims. (*See generally* Transcripts; 4th Hearing Tr. at 90:19-91:5 ("The Court: What about the exculpatory claim? Mr. Zazove: No. That's right out of [Airadigm]. We took the language -- the language is almost identical to the exact language that's exactly in that case. I mean it almost reads word for word.").)

L.      During the Third Hearing, Mr. Zazove elicited testimony confirming that the Plan contained no releases of third-party claims. He asked Patrick O'Malley, the Chief Restructuring Officer in Chicago H&S's bankruptcy proceedings, to verify that "[t]hese are only debtor releases, are they not?" (3rd Hearing Tr. at 146:13-14.) Mr. O'Malley responded: "That's correct. There is no intention to release third-party claims." (*Id.* at 146:15-16.)

**ANSWER:**   Admitted that the statements reflected in the transcript were made. Denied that Mr. Zazove elicited testimony that the plan did not release third-party post-petition claims. (*See generally* Transcripts; 4th Hearing Tr. at 90:19-91:5 ("The Court: What about the exculpatory claim? Mr. Zazove: No. That's right out of [Airadigm]. We took the language -- the language is almost identical to the exact language that's exactly in that case. I mean it almost reads word for word.").)

M.      During the Fourth Hearing, Judge Wedoff again acknowledged Mr. Zazove's statements that the Plan does not contain third-party releases, which statements Mr. Zazove confirmed and reasserted:

> "THE COURT:  Okay. First of all, you made clear earlier that there are no third-party releases.
>
> MR. ZAZOVE:  That's correct. . . .
>
> THE COURT:  The only releases being offered here are being offered by the debtor?
>
> MR. ZAZOVE:  That's correct. And to the extent that that's not clear, I'm making that representation once again.
>
> THE COURT:  All right."
>
> (4th Hearing Tr. at 37:22-38:6.)

**ANSWER:**   Admitted that the statements reflected in the transcript were made. Denied that Mr. Zazove represented that the plan did not release third-party post-petition claims. (*See generally* Transcripts; 4th Hearing Tr. at 90:19-91:5 ("The Court: What about the exculpatory claim? Mr. Zazove: No. That's right out of [Airadigm]. We took the language -- the language is almost

- 6 -

identical to the exact language that's exactly in that case. I mean it almost reads word for word.").)

      N.     During the Fourth Hearing, Mr. Zazove again represented to the Bankruptcy Court that the Plan contains no third-party releases:

> "MR. ZAZOVE: Your Honor, once again I represent to you there are no third-party releases."
>
> (4th Hearing Tr. at 90:21-22.)

**ANSWER**: Admitted that the statements reflected in the transcript were made. Denied that Mr. Zazove represented that the plan did not release third-party post-petition claims. (*See generally* Transcripts; 4th Hearing Tr. at 90:19-91:5 ("The Court: What about the exculpatory claim? Mr. Zazove: No. That's right out of [Airadigm]. We took the language -- the language is almost identical to the exact language that's exactly in that case. I mean it almost reads word for word.").)

      O.     During the Hearings, counsel and the Bankruptcy Court discussed the permissibility of third-party releases. (*See generally* Transcripts.)

**ANSWER**: Admitted.

      P.     At the Second Hearing, Judge Wedoff opined that releases of third-party claims against non-debtors are impermissible absent the express consent of the affected creditors, by stating:

- "[T]he only way they could give a [third-party release] is if the creditors who are asked to give that release are allowed to separately provide for it. So it becomes a contractual matter. The plan itself without that sort of separate contractual release can't be effected." (2nd Hearing Tr. at 9:12-18.)

- "The Bankruptcy Code plainly allows for the adjustment of the relationship between the debtor and its creditors. And if you want to provide that the debtor voluntarily gives releases, anyone claiming through the debtor would be bound by that. But to the extent that there are independent causes of action, I don't know what they might be, but causes of action that do not derivatively stem from the debtor's rights but are independent rights that third parties have, I don't see how

- 7 -

you can eliminate those rights by the mere fact that those people happen to be creditors in the debtor's estate." (*Id*. at 26:13¬ 25.)

**ANSWER**: Admitted that the statements reflected in the transcript were made. Denied that Judge Wedoff's statements correctly reflect the state of the law at confirmation. *See In re Airadigm*, 519 3d 640 (7th Cir. 2008).

Q. At the Third Hearing, Judge Wedoff acknowledged that subsequent to the Second Hearing, the U.S. Court of Appeals for the Seventh Circuit issued a decision setting forth parameters for permissible third-party releases. (*See* 3rd Hearing Tr. at 12:14-13:4.)

**ANSWER**: Admitted.

R. Mr. Zazove represented to the Bankruptcy Court that notwithstanding the Seventh Circuit's recent decision, the releases in the Plan had not been broadened and remained consistent with Judge Wedoff's guidance at the Second Hearing: "The limitations that we have included were the ones that you gave some guidance on the last time we were in the courtroom. We have not broadened them based upon that decision." (3rd Hearing Tr. at 6:11-15.)

**ANSWER**: Admitted that the statements reflected in the transcript were made. Denied that Mr. Zazove represented that the plan did not release third-party post-petition claims. (*See generally* Transcripts; 4th Hearing Tr. at 90:19-91:5 ("The Court: What about the exculpatory claim? Mr. Zazove: No. That's right out of [Airadigm]. We took the language -- the language is almost identical to the exact language that's exactly in that case. I mean it almost reads word for word.").)

S. The NRF never received a request in connection with the Chicago H&S bankruptcy proceedings for a separate contractual release of claims it may have against non-debtor parties, including, without limitation, claims for withdrawal liability. (Affidavit of Richard N. Rust dated July 17, 2013 ("Rust Aff."), annexed hereto as Exhibit E, ¶ 2.)

**ANSWER**: Admitted.

T. The Transcripts do not reflect that Chicago H&S or any other Plan proponent sought separate contractual releases from the NRF or that withdrawal liability to the NRF was even discussed. (*See generally* Transcripts.)

- 8 -

**ANSWER:**   Admitted.

U.   By Order dated March 21, 2008, the Bankruptcy Court approved the Plan, "having heard and considered . . . all objections and the arguments of counsel made at the [Hearings] to . . . confirm the Plan." (Order at 1-2.)

**ANSWER:**   Admitted.

V.   Although the July 2008 purchaser of the Property assumed the CBA and the obligation therein to contribute to the NRF, the parties to the July 2008 sale of the Property did not satisfy the other requirements of Section 4204(a)(1) of ERISA. (Rust. Aff. ¶ 3.)

**ANSWER:**   Admitted that the terms of the July 2008 sale are as asserted. Denied that Section 4204(a)(1) of ERISA is applicable. *See* 11 U.S.C. § 365(k).

W.   The July 2008 purchaser of the Property did not provide the NRF a bond or an amount held in escrow. (Rust. Aff. ¶ 3.)

**ANSWER:**   Admitted.

X.   Upon information and belief, the contract for July 2008 sale did not contain the language required by Section 4204(a)(1)(C) of ERISA.

**ANSWER:**   Admitted that the terms of the July 2008 sale are as asserted. Denied that Section 4204(a)(1) of ERISA is applicable. *See* 11 U.S.C. § 365(k).

Y.   Following the July 2008 sale of the Property, the NRF filed a proof of claim for withdrawal liability in the estimated amount of $1,276,271.33. (Rust. Aff. ¶ 4.)

**ANSWER:**   Denied. Claim 94-2 filed following the July 2008 sale of the Property and amending previously filed Claim 94-1 was for $1,222,002.33. (*See* Claim 94-2, attached as Exhibit 9.)

Z.   On June 21, 2011, the NRF received a final distribution from the Chicago H&S Hotel Property, LLC bankruptcy in the amount of $44,969.02. (Rust Aff. ¶ 5.)

- 9 -

**ANSWER:** Admitted that the NRF received a distribution on June 21, 2011. Denied that such distribution was final given the distribution described in Paragraph AA and the possibility of future distributions under the Plan. (Rust Aff. ¶ 6; Exhibit 1-A [Plan] at § 10.2.) Further responding, Plaintiff states that such distribution was pursuant to the NRF's stipulated general unsecured claim not any claim for withdrawal liability. (Answer ¶ 29.)

AA. On May 3, 2013, the NRF received an additional distribution from the Chicago H&S Hotel Property, LLC bankruptcy in the amount of $23,974.38. (Rust Aff. ¶ 6.)

**ANSWER:** Admitted. Further responding, Plaintiff states that such distribution was pursuant to the NRF's stipulated general unsecured claim not any claim for withdrawal liability. (Answer ¶ 29.)

DATED: August 2, 2013

Respectfully submitted,

PLAINTIFFS/COUNTER-DEFENDANTS
HOTEL 71 MEZZ LENDER LLC and
OAKTREE CAPITAL MANAGEMENT, L.P.

/s/ Daniel A. Zazove
One of Their Attorneys

Daniel A. Zazove (#3104117)
Christopher B. Wilson (#6202139)
Kathleen Stetsko (#6297704)
Abiman Rajadurai (#6308091)
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone : (312) 324-8400
Telecopier : (312) 324-9400
dzazove@perkinscoie.com
cwilson@perkinscoie.com
kstetsko@perkinscoie.com
arajadurai@perkinscoie.com

## CERTIFICATE OF SERVICE

I, Daniel A. Zazove, certify that on August 2, 2013, I caused **PLAINTIFFS/ COUNTER DEFENDANTS' RESPONSE TO DEFENDANT/COUNTER CLAIMANT'S STATEMENT OF ADDITIONAL MATERIAL FACTS** to be filed pursuant to the Court's CM/ECF system and served via the Court's CM/ECF System on:

>Michele M. Reynolds
>Jeremy M. Barr
>Dowd, Bloch & Bennett
>8 S. Michigan Avenue--19th Floor
>Chicago, IL  60603
>Telephone:  312.372.1361
>
>Jaimie Caren Davis
>Ronald E. Richman
>Schulte Roth & Zabel LLP
>919 Third Avenue
>New York, NY  10022
>Telephone:  212.756.2000

>>/s/Daniel A. Zazove____
>>One of the Attorneys for Plaintiffs/Counter-Defendants

Daniel A. Zazove (#3104117)
Christopher B. Wilson (#6202139)
Kathleen Stetsko (#6297704)
Abiman Rajadurai (#6308091)
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone :  (312) 324-8400
Telecopier :  (312) 324-9400
dzazove@perkinscoie.com
cwilson@perkinscoie.com
kstetsko@perkinscoie.com
arajadurai@perkinscoie.com