# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **HOTEL 71 MEZZ LENDER LLC and OAKTREE CAPITAL MANAGEMENT, L.P.** <br><br> Plaintiffs, <br><br> v. <br><br> **THE NATIONAL RETIREMENT FUND,** <br><br> Defendant. | No. 13 C 03306 <br><br> Chief Judge Rubén Castillo |
| **THE NATIONAL RETIREMENT FUND and THE TRUSTEES OF THE NATIONAL RETIREMENT FUND,** <br><br> Counter Plaintiffs, <br><br> v. <br><br> **HOTEL 71 MEZZ LENDER LLC, OAKTREE CAPITAL MANAGEMENT, L.P, and JOHN DOES 1-10,** <br><br> Counter Defendants. | |

## MEMORANDUM OPINION AND ORDER

This action arises from a dispute over whether an Order entered by the United States Bankruptcy Court for the Northern District of Illinois (the "Order") releases Oaktree Capital Management, L.P. ("Oaktree") and Hotel 71 Mezz Lender LLC ("Hotel 71 Lender") (collectively, "Plaintiffs") from withdrawal liability incurred under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. and owed to The National Retirement Fund (the "NRF" or "Defendant") and its Board of Trustees ("Trustees"). Plaintiffs seek a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that the Order,

which enforced the Second Amended Liquidating Plan of Reorganization (the "Plan") resolving the dissolution of Chicago H&S Hotel Property, L.L.C. ("Chicago H&S"), releases Plaintiffs from any withdrawal liability and enjoins the NRF from asserting any claim against Plaintiffs. The NRF and Trustees bring a counterclaim against Plaintiffs and all other trades and businesses under common control with Chicago H&S ("John Does 1-10", and collectively with Plaintiffs, the "Controlled Group") seeking to collect withdrawal liability, interest, liquidated damages, and attorneys' fees and costs pursuant to ERISA.

## RELEVANT FACTS[1]

Hotel 71 Lender is a Delaware limited liability company with its principal place of business in Wilmington, Delaware. (R. 31, Def.'s Rule 56.1 Resp. ¶ 1.) Oaktree is a Delaware limited partnership with its principal place of business in Los Angeles, California. (*Id*. ¶ 2.) The NRF, formerly known as UNITE HERE National Retirement Fund, is a multi-employer pension fund, jointly administered by union and employer trustees. (*Id*. ¶ 3.) The NRF is established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5), for the purpose of providing retirement and related benefits to eligible participants and beneficiaries. (R. 40, Pls.' Rule 56.1 Resp. ¶¶ 2, 4.) The Trustees are the plan sponsor of the NRF. (*Id*. ¶ 3.)

### A. Purchase of Hotel 71

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements of material facts. (R. 30, Plaintiffs/Counter Defendants' Statement of Undisputed Material Facts ("Pls.' Facts"); R. 31, Defendant/Counter Claimant's Response to Plaintiffs/Counter Defendants' Statement of Material Facts ("Def.'s Rule 56.1 Resp."); R. 31, Defendant/Counter Claimant's Statement of Additional Facts ("Def.'s Add'l Facts"); R. 35, Defendant/Counter Claimant's Statement of Undisputed Material Facts ("Def.'s Facts"); R. 39, Plaintiffs/Counter Defendants' Response to Defendant/Counter Claimant's Statement of Additional Facts ("Pls.' Resp. Add'l Facts"); and R. 40, Plaintiffs/Counter Defendants' Response to Defendant/Counter Claimants' Statement of Undisputed Material Facts ("Pls.' Rule 56.1 Resp.").)

2

In 2005, Chicago H&S purchased Hotel 71, a 40-story, 437-guestroom, full service hotel located at 71 East Wacker Drive in Chicago, Illinois. (R. 31, Def.'s Rule 56.1 Resp. ¶ 7; R. 40, Pls.' Rule 56.1 Resp. ¶ 9.) Chicago H&S borrowed heavily to finance this acquisition, including $100 million as a senior mortgage loan (the "Senior loan"), as well as a $27.3 million mezzanine loan[2] (the "Mezz loan"). (R. 31, Def.'s Rule 56.1 Resp. ¶ 8.) Oaktree, through Hotel 71 Lender, provided financing for the Mezz loan. (*Id.* ¶ 9.) As the new owner of Hotel 71, Chicago H&S became a party to several pre-existing collective bargaining agreements with union workers employed at the hotel, including the Agreement Between Joint Chicago Executive Board Of The Unite Here, Local 1 And Unite Here Local 450 And Chicago H&S Hotel Property, LLC (D/B/A Hotel 71) (hereafter, the "CBA"). (*Id.* ¶ 10.) As part of the CBA, Chicago H&S was required to make pension contributions on behalf of union employees to what was then the HEREIU Pension Fund. (*Id.* ¶ 11.) The NRF is successor in interest to the HEREIU Pension Fund. (*Id.*)

### B. Chicago H&S Files for Bankruptcy

Chicago H&S eventually ran into financial difficulties, and in 2007, it defaulted on both the Senior and Mezz loans. (*Id.* ¶ 12.) In October 2007, following the default, Hotel 71 Lender acquired a 100% ownership interest in Chicago H&S through a Uniform Commercial Code foreclosure sale in an effort to collect on its loan. (*Id.* ¶ 12; R. 40, Pls.' Rule 56.1 Resp. ¶ 8.) The parties dispute whether Oaktree owned or controlled Hotel 71 Lender, (R. 31, Def.'s Add'l Facts ¶ B; R. 31-2, Ex. I, Chicago H&S's Statement of Financial Affairs ¶ 21(b)), or simply managed it, (R. 39, Pls.' Resp. Add'l Facts ¶ B; R. 30-8, Ex. 7, Gibson Dunn Letter). On October 29, 2007, Chicago H&S filed a Chapter 11 petition in the United States Bankruptcy

---

[2] Mezzanine financing is debt capital that gives the lender the rights to convert to an ownership or equity interest in the company if the loan is not paid back in time and in full. It is generally subordinated to debt provided by senior lenders, such as banks and venture capital companies.

3

Court for the Northern District of Illinois (the "Bankruptcy Court"). (R. 40, Pls.' Rule 56.1 Resp. ¶ 12.) The NRF filed a proof of claim on February 15, 2008, for contingent withdrawal liability in the event that Chicago H&S decided to withdraw from making its contributions to the NRF. (*Id*. ¶ 13.)

### C. The Bankruptcy Proceedings and Plan

Chicago H&S filed a reorganization plan with the Bankruptcy Court on December 13, 2007, and amended the plan on March 17, 2008. (*Id*. ¶ 14.) Bankruptcy Judge Eugene R. Wedoff held multiple hearings regarding the confirmation of the Plan during March 2008. (R. 39, Pls.' Resp. Add'l Facts ¶¶ C-D.) On March 21, 2008, after multiple days of contested hearings, the Bankruptcy Court approved the Plan. (R. 31, Def.'s Rule 56.1 Resp. ¶ 14.) Section 13.1 of the Plan provides:

> The distributions to be received by creditors, or contemplated, under this Plan are in full and final satisfaction and settlement of any and all Claims arising in connection with [Chicago H&S's] Chapter 11 case that such creditors may have against the Releasees, the Debtor's estate, the estate assets and the assets contemplated under this Plan to satisfy Claims, and all such claims are released. For the avoidance of doubt, nothing in this section is intended, or shall be construed, to release, modify or otherwise affect any direct claim or direct cause of action that creditors have, or might have, against any third parties that arose prior to the Petition Date.

(*Id*. ¶ 20; R. 30-1, Ex. A, Plan ¶ 13.1.) The Plan defines "Releasees" as "the Debtor, its current owner and any officers, members and managers of its current owner, any professional retained by the current owner, the Trustee, Canyon/Brickman, (except as to claims of the Trustee) the Committee and any professional retained by the Committee." (R. 31, Def.'s Rule 56.1 Resp. ¶ 21; R. 30-1, Ex. A, Plan at 9.) Section 13.4 of the Plan provides an injunction barring claims involving any matter released under Section 13.1:

4

> *[A]ll holders of Claims shall be permanently enjoined from commencing or continuing in any manner, any suit, action or other proceeding, on account of any Claim, Interest, obligation, debt, right, cause of action, remedy or liability released or to be released pursuant to the Plan[.]*

(R. 31, Def.'s Rule 56.1 Resp. ¶ 22; R. 30-1, Ex. A, Plan ¶ 13.4.) Throughout Chicago H&S's bankruptcy case, the NRF received notice of: the sale of Hotel 71; the hearing to confirm the sale of Hotel 71; the Plan; and the entry of the Order confirming the Plan. (R. 31, Def.'s Rule 56.1 Resp. ¶ 15.) The NRF did not object to any of the proposed reorganization plans, including the Plan confirmed by the Bankruptcy Court. (*Id.* ¶ 16.)

In July 2008, pursuant to the Plan, the Bankruptcy Court approved the sale of Hotel 71 to the holder of the Senior loan for approximately $105 million. (*Id.* ¶ 17.) The purchaser expressly assumed liability for Chicago H&S's collective bargaining agreements, including the CBA, and continued to make all required pension contributions to the NRF. (*Id.* ¶ 25.) The proceeds from the sale of Hotel 71 were used to pay various creditors, including the NRF. (*Id.* ¶ 17.) Following the sale of Hotel 71, the NRF received distributions from the sale in the amounts of $44,969.02 on June 21, 2011, and $23,974.38 on May 3, 2013. (R. 39, Pls.' Resp. Add'l Facts ¶¶ Z-AA.)

Despite the fact that the purchaser of Hotel 71 assumed liability under the CBA, the NRF filed a proof of claim in the bankruptcy case for withdrawal liability triggered by the sale of Chicago H&S in the amount of $1,276,271.33. (R. 40, Pls.' Rule 56.1 Resp. ¶ 22.) The Chicago H&S bankruptcy estate contested the withdrawal liability claim. (R. 31, Def.'s Rule 56.1 Resp. ¶ 28.) In August 2009, after a series of negotiations, the NRF and Chicago H&S stipulated to resolve all of the NRF's claims, including its claim for withdrawal liability, by permitting the NRF a single, general unsecured claim of $550,000. (*Id.*; R. 30-2, Ex. D, Stipulation.)

### D. NRF Asserts Withdrawal Liability Against Plaintiffs

5

On April 1, 2013, the NRF's counsel sent to Hotel 71 Lender's counsel a letter notifying Hotel 71 Lender that it and all other trades or businesses under common control with Chicago H&S (collectively, the "Controlled Group") were liable for the unpaid portion of Chicago H&S's withdrawal liability and demanding payment of $2,169,754. (R. 31, Def.'s Rule 56.1 Resp. ¶ 29; R. 30-3, Ex. 2, April 1, 2013 Letter.) The letter further notified Plaintiffs that the balance of the liability was due and payable in 43 quarterly installments of $71,258.77, with the first payment due on May 1, 2013, plus a final payment of $11,046.65. (R. 40, Pls.' Rule 56.1 Resp. ¶ 22; R. 30-3, Ex. 2, April 1, 2013 Letter.) Plaintiffs' counsel responded by letter on April 18, 2013, asserting their position that Section 13.1 of the Plan released any alleged withdrawal liability claim and that Section 13.4 of the Plan enjoined the NRF from taking any further action to collect on its claim. (R. 31, Def.'s Rule 56.1 Resp. ¶ 31; R. 30-4, Ex. 3, April 18, 2013 Letter.) In response, the NRF reasserted its claim and threatened to sue the Controlled Group pursuant to Section 4219(a) of ERISA. (R. 30-5, Ex. 4, April 26, 2013 Letter.) In turn, Plaintiffs filed the instant action seeking declaratory relief. (R. 1, Compl.)

## PROCEDURAL HISTORY

Plaintiffs initiated this action on May 1, 2013. (*Id.*) Plaintiffs seek a declaration that Section 13.1 of the Plan released any claim against Plaintiffs and all members of its controlled group for withdrawal liability. (*Id.* at 9.) In addition, Plaintiffs seek a declaration that Section 13.4 of the Plan enjoins the NRF from asserting a withdrawal liability claim against Plaintiffs and all members of its controlled group. (*Id.*) On May 28, 2013, the NRF answered Plaintiffs' complaint and, adding Trustees as counter plaintiffs, filed a counterclaim alleging that Hotel 71 Lender and the Controlled Group are jointly and severally liable for withdrawal liability incurred by Chicago H&S's Chapter 11 reorganization. (R. 20, Def.'s Answer & Countercl. at 15-17.)

On June 27, 2013, Plaintiffs moved for summary judgment. (R. 27, Pls.' Mot. Summ. J.) The NRF and Trustees filed a cross-motion for summary judgment on July 19, 2013. (R. 34, Def.'s Mot. Summ. J.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). In deciding a motion for summary judgment, the Court does not evaluate the weight of the evidence, judge the credibility of the witnesses, or determine the ultimate truth of the matter; instead, it is the function of the Court in ruling on a motion for summary judgment to ascertain whether there exists a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "A disputed fact is 'material' if it might affect the outcome of the suit under governing law." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009) (citing *Anderson*, 477 U.S. at 248). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the non-movant. *See Anderson*, 477 U.S. at 255; *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) ("Even on summary judgment, district courts are not required to draw every requested inference; they must only draw reasonable ones that are supported by the record.").

The movant has the initial burden of demonstrating that it is entitled to summary judgment. *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). The movant "can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993) (citing *Celotex*, 477 U.S. at 325). Once the movant has met this burden, the non-movant must set forth "specific facts demonstrating that there is a genuine issue for trial." *Wheeler*, 539 F.3d at 634 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The non-movant may not rely on mere conclusions or allegations to create a genuinely disputed issue of material fact. *See Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 247-48). Nor can mere speculation "be used to manufacture a genuine issue of fact." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (quoting *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001)). In order to defeat a motion for summary judgment, the non-movant "must make a showing sufficient to establish any essential element of [its] cause of action for which [it] will bear the burden of persuasion at trial." *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 425 (7th Cir. 1997). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. The nonmoving party must show that there is evidence upon which a jury reasonably could find for [him]." *Wheeler*, 539 F.3d at 634 (internal citation omitted). On cross-motions for summary judgment, each movant must satisfy the requirements of Federal Rule of Civil Procedure 56. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).

## ANALYSIS

I.     **Availability of Declaratory Judgment**

As a preliminary matter, the Court addresses a threshold issue regarding Plaintiffs' request for declaratory relief. The Declaratory Judgment Act (the "DJA") authorizes a federal court, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The DJA does not confer subject matter jurisdiction, and therefore the Court must "possess an independent basis for jurisdiction." *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995). Here, Plaintiffs request a declaratory judgment that the injunction entered under the Plan and Order prevents the NRF from pursuing their withdrawal liability claims against them. (R. 1, Compl. at 9.) The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a), which provides that federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). The Court is thus satisfied that it possesses an independent basis for jurisdiction over the case.

The DJA's "actual controversy" requirement is equivalent to Article III's case-or-controversy requirement. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). To determine whether a declaratory judgment action satisfies the Article III case-or-controversy requirement, the court must inquire as to "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). A court cannot enter a declaratory judgment unless its ruling will provide specific relief which binds the parties or alters the legal relationship between them. *Deveraux v. City of Chi.*, 14 F.3d 328, 331 (7th Cir. 1994) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). "[A] party seeking a declaratory judgment has the burden of establishing the existence of an actual case or

9

controversy." *Cardinal Chem. Co. v. Morton Int'l, Inc*., 508 U.S. 83, 95 (1993) (citing *Aetna Life Ins.*, 300 U.S. at 240-41). Additionally, the controversy must have existed at the time the complaint was filed. *Super Prods. Corp. v. D P Way Corp.*, 546 F.2d 748, 752 (7th Cir. 1976) (citing *Am. Needle & Novelty Co. v. Schuessler Knitting Mills, Inc*., 379 F.2d 376 (7th Cir. 1967)).

Here, it is clear that a substantial controversy exists as to whether the Plan releases Plaintiffs from owing the NRF any withdrawal liability and enjoins the NRF from asserting any such claim. In addition, the controversy is immediate, as the NRF has already asserted its claim for $2,169,754 in withdrawal liability it claims was triggered by the July 2008 sale of Chicago H&S. (R. 30-3, Ex. 2, April 1, 2013 Letter.) Even after Plaintiffs' counsel replied to the NRF's demand letter explaining its legal position and requesting that the NRF revoke its claim, (R. 30-4, Ex. 3, April 18, 2013 Letter), the NRF reasserted its claim and threatened to sue Plaintiffs and its Controlled Group, (R. 30-5, Ex. 4, April 26, 2013 Letter). The parties demonstrate adverse legal interests, as Plaintiffs seek a declaration that the Plan releases them from withdrawal liability, and the NRF's and Trustees' countersuit claims that it is entitled to withdrawal liability. The parties' suit does not call "for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Aetna Life Ins.*, 300 U.S. at 242. The Court's resolution of the controversy will also bind the parties by clarifying the requirements imposed by the Plan and the Order. Neither party disputes that a substantial, immediate controversy sufficient to warrant a declaratory judgment exists in this case. Accordingly, the Court is satisfied that this case presents an actual case or controversy as required by the DJA.

**II.     Whether the NRF and Trustees are Entitled to Summary Judgment**

The NRF and Trustees move for summary judgment seeking that Hotel 71 Lender be held jointly and severally liable under ERISA for Chicago H&S's withdrawal liability.[3] (R. 34, Def.'s Mot. Summ. J.) Plaintiffs contend that Hotel 71 Lender is not a trade or business, and therefore it cannot be subject to any withdrawal liability claim. (R. 38, Pls.' Reply at 9.) Alternatively, Plaintiffs argue that the NRF and Trustees have not demonstrated that Chicago H&S actually incurred withdrawal liability as a result of its Chapter 11 sale. (R. 38, Pls.' Reply at 10.)

Under ERISA, the Pension Benefit Guaranty Corporation ("PBGC"), a government corporation, protects covered employees by insuring their benefits against insolvency or termination of their pension funds. *Cent. States Se. & Sw. Areas Pension Fund v. Messina Prods., LLC*, 706 F.3d 874, 878 (7th Cir. 2013). Prior to the 1980s, ERISA's contingent liability provisions provided employers "a perverse incentive to withdraw from financially weak

---

[3] The NRF and Trustees bring a counterclaim against Hotel 71 Lender, Oaktree, and John Does 1-10. In their pleadings, however, the NRF and Trustees fail to offer any argument or evidence as to Oaktree or John Does 1-10's withdrawal liability, and instead discuss only Hotel 71 Lender's withdrawal liability. (R. 36, Def.'s Mem. Summ. J. at 7-13.) The Seventh Circuit "[has] repeatedly warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *United States v. Useni*, 516 F.3d 634, 658 (7th Cir. 2008) (quoting *United States v. Holm,* 326 F.3d 872, 877 (7th Cir. 2003)). Further, the NRF and Trustees have neither provided the Court any indication as to the identities of John Does 1-10 nor mentioned them in any pleadings aside from the complaint. "[I]t is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver." *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010) (quoting *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002). The NRF and Trustees have thus waived their argument that Oaktree and John Does 1- 10 are jointly and severally liable for Chicago H&S's withdrawal liability. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) (deeming the plaintiff's negligence claim abandoned because he failed to delineate it in his brief in opposition to summary judgment); *Donelson v. City of Chi.,* 272 F. Supp. 2d 717, 726 (N.D. Ill. 2003) (finding that the plaintiff abandoned her claim because she provided no legal argument in support of her claim and because she made no serious effort to respond to the defendant's arguments); *Oak Brook Hotel Co. v. Teachers Ins. & Annuity Ass'n of Am.*, 846 F. Supp. 634, 641 (N.D. Ill. 1994) (finding the plaintiff's failure to defend a particular claim in response to the defendant's motion for summary judgment constituted abandonment of the claim). Accordingly, the Court will only address Hotel 71 Lender's alleged withdrawal liability.

multiemployer plans to avoid liability in the event the plan terminated in the future." *Id*. "As a result, the PBGC reported to Congress that the premiums paid to it were insufficient to cover its expected future liabilities." *McDougall v. Pioneer Ranch Ltd. P'ship*, 494 F.3d 571, 574 (7th Cir. 2007). To counteract the incentive for voluntary withdrawals, the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381-1461, amended ERISA by imposing mandatory liability on all withdrawing employers for their proportionate shares of "unfunded vested benefits." *Id*. (quoting 29 U.S.C. § 1381). But Congress went further, including in the MPPAA a provision that all "'trades or businesses' under 'common control' with the withdrawing employer are treated as a single entity for purposes of assessing and collecting withdrawal liability. *Messina Prods.*, 706 F.3d at 878 (citing 29 U.S.C. § 1301(b)(1); *Cent. States, Se. & Sw. Areas Pension Fund v. Neiman*, 285 F.3d 587, 594 (7th Cir. 2002). "Each trade or business found to be under common control is jointly and severally liable for any withdrawal liability of any other." *Id*. The purpose of the "common control" provision is "to prevent businesses from shirking their ERISA obligations by fractionalizing operations into many separate entities . . . ." *Id*. (quoting *Cent. States, Se.& Sw. Areas Pension Fund v. White*, 258 F.3d 636, 644 (7th Cir. 2001)). To impose withdrawal liability on an organization other than the one originally obligated to the pension fund, "two conditions must be satisfied: (1) the organization must be under common control with the obligated corporation; and (2) it must be a trade or business." *Cent. States, Se. & Sw. Areas Pension Fund v*. *Fulkerson*, 238 F.3d 891, 894-95 (7th Cir. 2001).

The present dispute hinges on whether Hotel 71 Lender is properly designated as a "trade or business under common control" with Chicago H&S within the meaning of the MPPAA. If Hotel 71 Lender is not a trade or business under common control with Chicago H&S, then there

12

can be no withdrawal liability asserted against it, and the Court must deny the NRF's and Trustees' motion for summary judgment. Accordingly, the Court begins its analysis by determining whether Hotel 71 Lender is a "trade or business under common control" with Chicago H&S.

### A. Whether Hotel 71 Lender is Under Common Control with Chicago H&S

The MPPAA's definition of "common control" is derived from the regulations promulgated under section 414(c) of the Internal Revenue Code. *SCOFBP*, 668 F.3d at 880 (citing 29 U.S.C. § 1301(b)(1)). The regulations provide for three methods of common control—a parent-subsidiary group, a brother-sister group, or a "combined" group consisting of both parent-subsidiary and brother-sister relationships. *Id.* (citing 26 C.F.R. § 1.414(c)-2(a)). A parent-subsidiary group exists when a parent owns a "controlling interest" in the relevant subsidiary organizations, which is defined as at least 80% ownership. *Id.* (citing 26 C.F.R. § 1.414(c)–2(b)(2). Both parties admit that at the time of the Chicago H&S sale Hotel 71 Lender held a 100% ownership interest in Chicago H&S. (R. 35, Def.'s Facts ¶¶ 19, 20; R. 40, Plaintiffs' Rule 56.1 Resp. ¶¶ 19, 20.) Therefore, the Court finds that Hotel 71 Lender was in common control with Chicago H&S.

### B. Whether Hotel 71 Lender is a Trade or Business

The Court next considers whether Hotel 71 Lender is a trade or business under the MPPAA. Plaintiffs dispute the NRF's and Trustees' designation of Hotel 71 Lender as a trade or business and contend that such a designation is a question of fact that cannot be resolved on summary judgment. (R. 38, Pls.' Reply at 9.)

In *Central States, Southeast and Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1374 (7th Cir. 1992), the Seventh Circuit held that although the question of whether or not an

13

enterprise is a trade or business is not ordinarily resolved on summary judgment, delaying judgment does not "make much sense in a case in which the only 'factual' issue is one of characterization . . . *and* the opponent of summary judgment claims no right to a jury trial." In this instance, "both the record and the fact finder are the same in the summary judgment proceeding as they would be in a trial," and therefore, "the formally 'factual' dispute is properly resolved on summary judgment." *Id*. (citing *Dimmitt & Owens Fin., Inc. v. United States*, 787 F.2d 1186, 1192 (7th Cir. 1986); *May v. Evansville–Vanderburgh Sch. Corp*., 787 F.2d 1105, 1116 (7th Cir. 1986); *see also McDougall*, 494 F.3d at 578 (affirming the district court's decision on summary judgment that a partnership was a trade or business under the MPPAA). Here, as in *Slotky*, the only "factual" dispute is over the NRF's characterization of Hotel 71 Lender as trades or businesses. In addition, neither party has requested a jury trial. In fact, there is no jury trial right in ERISA actions. *See McDougall*, 494 F.3d at 576 ("The general rule in ERISA cases is that there is no right to a jury trial because 'ERISA's antecedents are equitable,' not legal." (quoting *Mathews v. Sears Pension Plan*, 144 F.3d 461, 468 (7th Cir. 1998))). Therefore, the Court may properly decide this issue on summary judgment.

Although the MPPAA does not define "trade or business," the Seventh Circuit has adopted the test established in *Commissioner of Internal Revenue v. Groetzinger*, 480 U.S. 23, 35 (1987), to determine whether an enterprise constitutes a trade or business. *Id.* at 577. Under the *Groetzinger* test, the Court must consider whether the organization engaged in an activity (1) with continuity and regularity and (2) for the primary purpose of income or profit. *Id*. (citing *Groetzinger*, 480 U.S. at 35). "One purpose of the *Groetzinger* test is to distinguish trades or businesses from passive investments, which cannot form a basis for imputing withdrawal liability under section 1301(b)(1)." *Messina Prod*s., 706 F.3d at 878; *see also Fulkerson*, 238

14

F.3d at 896 ("Given the prevalence of investing, permitting the holding of investments . . . without more to be considered regular and continuous activity would eviscerate the limitations placed in the text of § 1301(b)(1).").

The NRF and Trustees argue that Hotel 71 Lender is a trade or business due to its controlling interest in Chicago H&S. (R. 36, Def.'s Mem. Summ. J. at 8.) As discussed above, a passive investment is insufficient to establish that an entity is a trade or business. The Seventh Circuit has held that creating a formal business entity, having employees, and claiming business exemptions and deductions, indicates the existence of a trade or business. *McDougall*, 494 F.3d at 577–78. But personal investments, such as stocks, commodities, leases, or something else, without more is the hallmark of an investment." *Fulkerson*, 238 F.3d at 895. Despite being formal business entities, the factual record is devoid of any facts indicating that Plaintiffs have a trade or business under the MPPAA. Based on the facts the parties present, the Court can only conclude that the relationship between Hotel 71 Lender and Chicago H&S is one of a "passive investment." Accordingly, the Court concludes that Hotel 71 Lender is not a trade or business.

To prevail on their motion, the NRF and Trustees must demonstrate that Hotel 71 Lender is a trade or business under common control with Chicago H&S. *See Messina Prods.*, 706 F.3d at 878. They have the burden of proving that the undisputed facts entitle them to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Because the NRF and Trustees have failed to prove that Hotel 71 Lender is a trade or business, the Court cannot find that it is jointly and severally liable with Chicago H&S's Controlled Group. Likewise, the Court has already established that Oaktree and John Does 1-10 are not jointly or severally liable, as the NRF and Trustees have waived their argument as to their liability. In addition, the Court must deny the NRF and Trustees' request for mandatory add-ons under Section 502(g) of ERISA, including liquidated

15

damages, attorneys' fees and costs, as these are only granted in successful ERISA suits. *See Slotky*, 956 F.2d at 1377. Consequently, the Court denies the NRF and Trustees' motion for summary judgment.

Having resolved the NRF's and Trustees' motion, the Court now turns to Plaintiffs' motion for summary judgment.

**III.   Whether Plaintiffs are Entitled to Summary Judgment**

Plaintiffs contend that Section 13.1 of the Plan releases the NRF's withdrawal liability claim. (R. 28, Pls.' Mem. at 8.) Plaintiffs further argue that Section 13.4 of the Plan enjoins the NRF from asserting any claim against them. (*Id.*) In an effort to avoid this finding, the NRF asserts various arguments. Specifically, the NRF contends that the Plan does not release third-party claims, and if it did, the Plan would be unenforceable under both ERISA and Seventh Circuit precedent. (R. 32, Def.'s Mem. Opp'n Summ. J. at 8-13.) Having already decided that Plaintiffs and John Does 1-10 are not jointly and severally liable for Chicago H&S's withdrawal liability, however, the Court need not address the parties' arguments as to this motion. The Court has declared the rights of the parties, and declines to go any further in resolving this declaratory judgment. The Seventh Circuit has provided guidance under these circumstances, holding that "a district court should not grant declaratory relief unless there is an actual, 'substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (quoting *Md. Cas. Co.*, 312 U.S. at 273). The Court has resolved the substantial controversy by deciding the withdrawal liability issue, and it finds no other live controversy in this dispute to warrant declaratory relief. Accordingly, the Court grants Plaintiffs' motion with respect to the issue of withdrawal liability.

16

## CONCLUSION

For the foregoing reasons, the NRF's and Trustees' motion for summary judgment (R. 34) is DENIED. Plaintiffs' motion for summary judgment (R 27) is GRANTED with respect to the withdrawal liability issue. The Clerk of the Court is directed to enter a declaratory judgment in favor of Plaintiffs only to the extent stated in this opinion.

                                  **ENTERED:**

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: March 3, 2014**